PATRICK MULVEHILL *vs.* JOSEPH W. BATES.

January 7, 1884.

Master and Servant—Owner of Express Wagon held liable for Neg-
ligence of Driver carrying a Load for himself.—The owner of an
"express wagon" employed a servant to drive it, and intrusted it to him,
*generally, to be used at his discretion, in doing such business as he, the
servant, could secure in the way of employment for the wagon.* While
thus employed, the servant, having delivered a trunk, on his return got
"a load of poles for himself," and, while taking them home, negligently
drove over and injured the plaintiff's child. *Held,* that the master was
liable.

Appeal by defendant from a judgment of the municipal court of
St. Paul. The case is stated in the opinion.

*Louis M. Hastings,* for appellant.

To render a master liable for the negligence of his servant, the in-
jury complained of must have occurred while the servant was acting
in the scope of his employment, and in the actual course of his em-
ployment. *Mitchell* v. *Crassweller,* 13 C. B. 237; *Storey* v. *Ashton,*
L. R. 4 Q. B. 476; *Rayner* v. *Mitchell,* L. R. 2 C. P. Div. 357; *Doug-
lass* v. *Stephens,* 18 Mo. 362; *Moore* v. *Sanborne,* 2 Mich. 519; *Court-
ney* v. *Baker,* 37 N. Y. Sup. Ct. 249; *Sheridan* v. *Charlick,* 4 Daly,
(N. Y.) 338; *Lee* v. *Nelms,* 57 Ga. 253; *Cavanagh* v. *Dinsmore,* 12
Hun, 465; *Stone* v. *Hills,* 45 Conn. 44; *Mott* v. *Consumers' Ice Co.,*
73 N. Y. 543.

*O'Brien & Wilson,* for respondent, cited *Venables* v. *Smith,* L. R. 2
Q. B. Div. 279; *Patten* v. *Rea,* 2 C. B. (N. S.) 606; *McManus* v.
*Crickett,* 1 East, 106; *Joslin* v. *Grand Rapids Ice Co.,* 15 N. W. Rep.
887; *S. C.* 50 Mich. 516.

MITCHELL, J.  This action was brought to recover damages for the
alleged negligence of defendant's servant in driving over and injur-
ing the child of plaintiff.  The important question in the case is
whether, at the time the injury was inflicted, the servant was acting
within the scope of his employment, or had turned aside from that
employment, and was acting exclusively for himself as master *pro*

*tempore.* All the evidence bearing on this point is "that Esterbrook (the servant) drove an express wagon regularly for defendant. He picked up business on the street." On the day in question "he had gone over to West St. Paul to deliver a trunk, then went a block and a half in a direction away from his return route to the city (St. Paul) and got a load of poles for himself, (which he afterwards sold for himself,) and was taking the poles home when he ran over the boy." Defendant testifies that "hauling the poles was not for him; that he knew nothing of it until at the trial." We understand from this that the horse and express wagon were intrusted, *generally*, to the driver, with authority to secure such business as he could, make his own contracts, and drive wherever it might be necessary to go, in order either to receive or deliver any articles which he might be employed to transport. Had some one employed him to transport a load of poles, it seems to us that there would have been no doubt but that, in going for them and in conveying them to their destination, he would have been acting within the scope of his employment, for that was just the kind of business he was employed to perform, as much as in transporting trunks or any other kind of property. The fact that it was his own property which he was carrying on this occasion seems to us immaterial. If he had any articles which he himself desired conveyed by an express, there was no reason why he might not transport them in his master's wagon as well as that of third parties, being liable of course, if he did so, to account to his employer for the usual price for such services, the same as if performed for some one else. He was intrusted, generally, with the wagon to hunt up just such work wherever he could find it, and with authority to carry articles for whomsoever he saw fit. Whether he accounted to the master for the value of the time occupied in transporting his own property is immaterial, that being a matter entirely between themselves.

Counsel for appellant, in his able and ingenious argument, cites in support of his position a number of cases, of which *Mitchell* v. *Crassweller*, 13 C. B. 237, is a sample, in which it is held that where the driver of the master's vehicle turns wholly aside from the master's employment and engages in an independent journey, wholly for-

eign to his employment, and for a purpose exclusively his own, the master is not liable for his acts. We have had occasion recently (in *Morier* v. *St. Paul, M. & M. Ry. Co., ante,* p. 351) to consider and indorse the doctrine of these cases. But this class of cases is clearly distinguishable from the present. There the servant had specific orders as to the mode of dealing with the vehicle, and was obliged to attend to the specific errand on which he was sent and then return to his master. If, under these circumstances, he employed the vehicle on some purpose wholly independent of his orders, of course he was not within the scope of his employment, and the master is not liable. But here the wagon was intrusted, generally, to the driver, to be used entirely at his discretion. This distinction is very clearly stated by *Cockburn,* C. J., in *Venables* v. *Smith,* L. R. 2 Q. B. Div. 279, a case very analogous to this one. It is true that, in that case, but for a statute, the relation between the owner of the cab and the driver would have been that of a bailor and bailee, and not of master and servant. The statute created the relation of master and servant—a relation which, in the present case, confessedly existed. But, as is expressly stated in the case referred to, it was only with regard to the employment of the cab *within the scope of the bailment* that the relation of master and servant was created. Hence, there as here, it had to be determined whether, at the time of the injury, the vehicle was being used within the scope of the bailment or employment, for, as is there said, if the employment of the vehicle by the driver, at the time the mischief was done, was wrongful, in the sense that it was beyond the scope of the bailment, then the master would not be liable. So in this case, if the driver had taken the wagon on an independent journey of his own, altogether out of the scope of the purposes for which it was intrusted to him, and an injury had then occurred, the defendant would probably not have been liable. But such was not the fact. The trip in which the servant was using the wagon was within the scope of the purposes for which it was intrusted to him.

The point is also made that the boy himself who was injured was guilty of contributory negligence. The burden was upon defendant to establish this fact affirmatively. In view of the very meagre evi-

dence bearing upon that question, we could not say, as a matter of law, that the boy was guilty of negligence. That being the case, the finding of the court below is conclusive.

Objection is here made for the first time to the complaint that it improperly unites two causes of action, to wit, for damages sustained by the child, and also for damages sustained by plaintiff as parent. This, if true, could not now be taken advantage of on this appeal. But clearly the complaint only sets up as a cause of action damages sustained by plaintiff as parent, and reference to the sickness and suffering of the child is made merely to show that plaintiff was thereby put to expense and outlay in nursing and taking care of him.

Judgment affirmed.