**TRACHTENBERG et al. v. CASTILLO.\***
(No. 1522.)

(Court of Civil Appeals of Texas. El Paso.
Nov. 15, 1923.   Rehearing Granted in Part
Dec. 13, 1923.   Further Rehearing Denied
Jan. 17, 1924.)

**1. Master and servant ⬤═332(1)—Relation generally question for jury.**

As a rule in an action for negligence of an alleged servant the question of relationship of employer and employee is a question for the jury, but, where the facts are undisputed, the question of relationship is one of law.

**2. Master and servant ⬤═301(1)—Relation element of liability for injury.**

An employer is liable for personal injuries received through the act of an alleged employee only when the relation of employer and employee existed between the parties at the time of injury.

**3. Master and servant ⬤═301(1)—Test of relationship.**

The conclusive test of the relationship of employer and employee is whether the alleged employer had the right to control the action of the person doing the alleged wrong at the time it was perpetrated.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Master and Servant.]

**4. Trial ⬤═125(2)—Remarks of counsel referring to defendants held objectionable.**

In an action for death of plaintiff's decedent killed by defendant's truck, remarks of plaintiff's attorney referring to defendants as "these sweet-scented apple blossoms from Russia" and "these birds from Russia" were objectionable, as invoking race prejudice.

On Motion for Rehearing.

**5. Master and servant ⬤═330(3)—Evidence held to show truck driver was servant of owners.**

Evidence *held* sufficient to show that the motor truck driver whose negligence caused the injury complained of was the servant of defendants and acting within the scope of his authority in the pursuit of his employer's business at the time of the accident, and was sufficient to make a prima facie case.

**6. Master and servant ⬤═330(1)—Ownership of negligently driven truck prima facie evidence of liability shifting burden of proof.**

Where defendants' ownership of an automobile truck is proved, in connection with proof establishing that injuries resulted from it being negligently driven by a servant, a prima facie case is established, and the burden is upon defendant to prove that the servant was not acting within the scope of his employment when he negligently inflicted the injuries.

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Action by Concha Trejodá Castillo against K. Trachtenberg and C. Axelrad, doing business as the El Paso Auto Wrecking Company. Judgment for plaintiff. Defendants appeal. Reversed and remanded.

Jones, Jones, Hardie & Grambling, of El Paso, for appellants.

John L. Dyer and R. A. D. Morton, both of El Paso, for appellee.

WALTHALL, J.   On the 17th day of March, 1922, Rudolfo Castillo, a five year old son of Concha Trejoda Castillo, while crossing Overland street in the city of El Paso, was struck and killed by a motor truck then being driven by Tom Allen. This suit was brought by Concha Trejoda Castillo, the mother of the child, against K. Trachtenberg and C. Axelrad, individually, and as partners, doing business under the firm name of El Paso Auto Wrecking Company, to recover damages alleged to have been sustained by her on account of the death of the child, Rudolfo.

Plaintiff alleged that defendants were the owners of the said motor truck, and that at the time of the accident resulting in the death of the child the said motor truck was then being operated by Tom Allen, a servant of defendants, acting in the due course of his employment, and in the furtherance of defendants' business. The negligent act assigned and submitted by the court was a failure on the part of the driver of the motor truck to keep a sufficient lookout ahead of the motor truck to discover the presence of the child.

Defendants answered by demurrers, general and special, general denial, and specially denied that the driver of the motor truck, Tom Allen, was guilty of the negligence alleged; denied that Tom Allen, at the time of the accident resulting in the death of the child, was the servant of defendants; denied that Tom Allen, at the time of the negligent act complained of, was acting within the scope of any employment of defendants.

The case was tried with a jury and submitted upon special issues. The issues, both of pleading and the evidence submitted on the trial, are reflected by the matters submitted to the jury, in the court's charge and the jury's answers thereto, which are as follows, after definitions of terms, about which no question is presented:

"Question No. 1: Do you find from the preponderance of the evidence, at the time of the accident complained of, Tom Allen was then and there an employee of the defendants, and acting in the course of his employment for them?" To which the jury answered "Yes."

"Question No. 2: Do you find from a preponderance of the evidence that Tom Allen, at and just before the time of the collision, failed to keep a lookout ahead?" To which the jury answered: "Yes."

"If you answer the preceding question in the affirmative then answer:

⬤═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

257 S.W.—42    \*Writ of error dismissed for want of jurisdiction March 5, 1924.

"Question No. 3: Do you find from a preponderance of the evidence that Tom Allen was negligent in failing so to do?" To which the jury answered: "Yes."

To question 4 the jury found that the negligence found was a proximate cause of the injury and death of the child. To question 5 the jury found that the pecuniary loss to plantiff, by reason of the death of the child, was the sum of $1,150.

At the request of defendants the court submitted special issue "C", as follows:

"Do you find, under the terms of Allen's employment by the defendants, if any, and, as a part of the compensation of said Allen for such employment, if any, that said Allen was given the right to use said truck for his own purposes when not being used for purposes of the defendants, and that at the time of the accident the said Allen was using said truck for his own purposes and not in the prosecution of any business for the defendants?" To which the jury answered: "Was using for defendants' business."

Judgment was rendered for the plaintiff for the amount as found by the jury.

On the overruling of defendants' motion for a new trial, notice of appeal was duly given.

Under the first two propositions appellants make the contention that Tom Allen, the negro driver of the motor truck, was not the employee of appellants, was not acting in the furtherance of their business at the time of the accident resulting in the death of the child, but was then using the truck for his own purposes.

Without quoting at length from the evidence it, without contradiction, shows the following: The motortruck, at the time of the accident and for several years prior thereto, belonged to one of the appellants; appellants were partners in the matters about which Tom Allen was employed, and had been so for some two years prior to the accident, in which business the truck in question was used in hauling the goods of appellants, and on the day of the accident had been so used by Tom Allen at the call, instance, and employment of appellants; the license for the use of the truck was taken out by appellants, Tom Allen paying part of the expense of the license and appellants paying part, and the truck when used was used under that license; the driver of the truck, Tom Allen, a year or more before the accident had been in the regular employment of appellants as the driver of one of their trucks, but for some time previous to the accident Tom Allen was not in the regular employment of appellants, but was using this particular truck partly for his own use and for the use and at the employment of appellants when called on for service by them; Tom Allen was permitted by appellants to keep the truck in his possession at all times, and to use the truck in going to and returning from his work when working for appellants; on the day of the

accident and half of the day previous he had been working for appellants, at their call and employment, and used the truck all the time in performing that service, and at the end of the day's work for appellants and at the time of the accident, he (Tom Allen) was returning in the truck to his home, or to the place where he kept the truck; at the end of that day's service he had not been called for further service for appellants, but was subject to call for service with the truck, at any time. When working for appellants, they furnished the gasoline used by the truck, and one of appellants had given Tom Allen the gasoline for the truck for the day of the accident; on the day of the accident and prior thereto appellants had paid Tom Allen for his services for that day and half of the previous day, and while returning home from that service the accident occurred; in paying Tom Allen for his services appellants paid him what they thought was right, whether much or little, and he accepted it without question. When Tom Allen was using the truck for himself, he paid no rent for its use; shortly after the accident Tom Allen called appellants over the phone and informed them of the accident; appellants on being so informed took off the plate showing the number of the license and hid the plate in their office, where the same was found by the police in their efforts to locate the truck and discover its owner.

The first question presented is: Do the facts show that Tom Allen was an employee of appellants at the time of the accident, and was his service in driving the truck in furtherance of the service of appellants for which he was employed? In other words, and more specifically stated: Does the evidence show that Tom Allen's service as an employee of appellants ceased when he had completed the hauling for appellants for that time or call, and had returned to appellants' place of business and received his pay for his services; or did his service to appellants extend to the time and place where he kept the truck? We have concluded that the undisputed evidence conclusively shows that Tom Allen was not in the employ of appellants in driving the truck at the time of the accident, his service to appellants having ceased when the hauling for which he was employed had ended and he had received his pay.

Appellee refers us to several cases to sustain the contention that Tom Allen in driving the truck at the time of the accident was then in the service of appellants, among them: Kirby Lumber Co. v. Scurlock, 112 Tex. 115, 246 S. W. 77; Western Indemnity Co. v. Leonard (Tex. Com. App.) 248 S. W. 655; D'Aleria v. Shirey (C. C. A.) 286 Fed. 524; Mulvehill v. Bates, 31 Minn. 364, 17 N. W. 959, 47 Am. Rep. 796; Barmore v. Ry., 85 Miss. 426, 38 South. 210, 70 L. R. A. 629, 3 Ann. Cas. 594; Jones v. Exchange (Tex.

Civ. App.) 250 S. W. 1075, and others. None of the cases, we think, are sufficiently analogous in their facts to the case at bar to sustain appellee's contention. It would extend this opinion to too great length to review all of them here. In the Kirby Lumber Co. Case, supra, the company owned all the property around the sawmill, and as a means of access to and egress from the sawmill, in order to facilitate the work done by Scurlock for the company, the company permitted Scurlock, the deceased, who was working daily for the company at its sawmill and who lived some distance from the mill, and near the company's tramroad, to use the tramroad for the purpose of running his velocipede in going to and returning from his work. Scurlock was killed by one of the company's log trains while using the tramway in returning from his work. It was held, in construing and applying the Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91), that the relation of master and servant existed while Scurlock was returning from his daily labor at the mill to which he had reported for work, as against the contention that Scurlock did not receive his injury in the course of his employment, as the mill was closed that particular day and Scurlock had performed no service that day. His employment and his permit to use the tramway were in existence at the time of his injury.

To the same effect is Western Indemnity Co. v. Leonard, supra. The case involved the construction and application of the Workmen's Compensation Act. Leonard was an employee of the Universal Shipbuilding Company, and his employment included transportation to and from his place for work. While on his way to his work he was notified by his employer, by means of a signal used, that on account of rain no work would be performed that day. In his efforts to return to his home he was injured. It was held, under the facts of the case, that within the meaning and legal effect of the Texas Workmen's Compensation Act, Leonard at the time of his injuries was engaged in the course of his employment by reason of the verbiage of the act; that the term "injury sustained in the course of employment" includes all injuries of every kind and character having to do with and originating in the work, etc., of the employer, received by an employee while engaged in or about the furtherance of the affairs or business of his employer, whether upon the employer's premises or elsewhere. The court said that under the facts of the case there was no break in his employment from the time he started to his work until he returned.

The instant case does not come under the provisions of the Workmen's Compensation Act as applied in the two cases above, and in this case there was a break of employment by payment for service performed, and the service of Tom Allen ended until another call should be made before Tom Allen started to return to his home.

Other important differences between the two above reviewed cases and the instant case are readily seen. Appellee quotes from Mulvehill v. Bates, supra. In that case the owner of an express wagon employed a driver with authority to secure and transact such business as he could in making use of the wagon. The driver, after making delivery of a trunk, on his return got a load of poles for himself, and while carrying them home on the wagon negligently injured a child. The important question in the case was whether, at the time of the injury, the servant was acting exclusively for himself as master pro tempore. The court held the owner of the wagon liable on the theory, as stated, that if the driver had any articles which he desired to convey there was no reason why he himself might not do so in his master's wagon as well as that of third parties, being liable to the master for the price of the service. It seems clear that the service to himself in conveying the poles, in the absence of some agreement to that effect, did not ipso facto terminate his employment; he was the servant of the master before, at the time, and after the injury to the child in the use of the wagon. The only question in that case that seems at all pertinent to the inquiry here is: Was the driver acting for the owner of the wagon in conveying the poles for himself? Had the driver been discharged from the service of the owner before the driver conveyed the poles for himself, or had the owner permitted the driver to use the wagon for himself and without compensation to the owner, a somewhat similar question to that here would have been presented.

Without further reviewing the cases referred to by appellee, we add that none of them present the question here.

[1] The jury found that Tom Allen at the time of the accident was then an employee of appellants. We are not unmindful of the rule that the question of relationship of employer and employee is a question of fact for the jury; but it is also the rule that where the facts are undisputed, as here, the question of relationship becomes one of law.

[2] In order to charge one as employer for personal injuries alleged to have been received through the act of an alleged employee, it must appear that the relation of employer and employee existed between the parties at the time of the injury.

[3] The conclusive test of the relationship is whether the alleged employer had the right to control the action of the person doing the alleged wrong at the time of and with reference to the matter out of which the alleged wrong sprang. Cunningham v. Ry. Co., 51 Tex. 510, 32 Am. Rep. 632, and authorities; Cunningham v. Moore, 55 Tex. 373, 40 Am. Rep. 812; Bailey, Personal Injuries

(2d Ed.) vol. 1, § 19, and the cases referred to in note 3. The person doing the wrong must not only be the employee of the person sought to be held liable for the wrong done, but it must appear that the acts complained of were done by him while performing some duty pertaining to that employment. Hill v. Staats (Tex. Civ. App.) 189 S. W. 86.

In this case, as was said by Judge Boyce in Van Cleave v. Walker (Tex. Civ. App.) 210 S. W. 767, the return of the truck to the place where it was kept at the conclusion of the service of Tom Allen to appellants was but an incident to its use, and if the use was for the benefit of Tom Allen, and not in the service of appellants, the return of the truck is to be regarded as for his own benefit.

We have concluded that, under the undisputed facts, as disclosed by the record, the relation of employer and employee did not exist between appellants and Tom Allen at the time of the alleged negligent act resulting in the death of the child, and a peremptory instruction in favor of defendants should have been given. Christensen v. Christiansen (Tex. Civ. App.) 155 S. W. 995; Van Cleave v. Walker (Tex. Civ. App.) 210 S. W. 767; Rew v. Stoddard (Tex. Civ. App.) 225 S. W. 836.

We think the second and third findings of the jury, in which the jury found that Tom Allen failed to keep a lookout ahead and that such failure was negligence, can be sustained by the evidence.

[4] The fourth proposition, complaining of the remarks of one of appellee's attorneys referring to appellants as "these sweet-scented apple blossoms from Russia," and "these birds from Russia," is well taken. The remarks were objectionable on almost every ground we could think of, and especially as invoking race prejudice, and the court, we think, should have taken steps to correct it, as the jury would probably get the idea that the court concurred in the remarks made.

For the reasons stated in discussing the first and second propositions, the case is reversed, and, it appearing that the facts upon which the case is reversed have been fully developed, judgment is here rendered for appellants.

On Motion for Rehearing.

HARPER, C. J. [5] In the original opinion it is held that the evidence there quoted was uncontradicted. After considering the arguments of counsel and the authorities cited in the motion for new trial, as well as the many circumstances in evidence, we have concluded that we were in error, and that these circumstances are of sufficient probative force to constitute the basis for the legal inference that Allen was the servant of appellants and acting within the scope of his authority in the pursuit of his master's business at the time of the accident, therefore sufficient to make a prima facie case. Baker v. Loftin (Tex. Com.

App.) 222 S. W. 195; Pierce-Fordice Oil Assoc. v. Brading (Tex. Civ. App.) 212 S. W. 707; 22 L. R. A. 1400, note.

[6] Thus it became incumbent upon the defendants to meet such prima facie case by such evidence as would satisfy the jury that Allen was not acting within the scope of his employment when he negligently inflicted the injuries. Lang Floral Nursery Co. v. Sheridan (Tex. Civ. App.) 245 S. W. 473.

We adhere to the holding that the argument of counsel is reversible error.

Reversed and remanded.