## JACOBY v. SOUTHERN PAC. RY. CO.

### No. 12014.

Court of Civil Appeals of Texas. Dallas.

Oct. 17, 1936.

Myres & Killough, of Dallas, for appellant.

Robertson, Leachman, Payne, Gardere & Lancaster, of Dallas, for appellee.

516

JONES, Chief Justice.

In a suit by appellant, George Jacoby, against appellee, Southern Pacific Railway Company, for damages because of personal injuries resulting from an alleged assault by a special agent of appellee, judgment was rendered in favor of appellee on an instructed verdict. The appeal has been duly perfected to this court, and the following are the necessary facts:

After appellant closed his evidence, appellee moved for an instructed verdict, on the ground that the evidence failed to make out the case alleged by appellee in his first amended original petition. Appellant assigns this as error, contending that the evidence raised a jury issue in his favor.

The Texas & New Orleans Railway Company, which is owned by appellee, operates a railway yard in South Dallas. The tracks of this yard intersect Eakin street, a public street running approximately east and west. Near this intersection and on the north side of Eakin street is a building known as the "old freight house," which is now used as an office for certain employees. On the evening of December 27, 1933, appellant was walking on the sidewalk on the north side of Eakin street, near the "old freight house," and was going home when he was stopped by one O. L. Mounts near the freight house and near a grocery store in that vicinity, and was questioned by Mounts as to what he was doing, where he was going, and where he had been. To all of these questions, appellant, who is a colored man and described his calling as that of a "brick-layer and a minister of the gospel," gave respectful and straightforward answers. At the conclusion of these questions, Mounts, without provocation, assaulted appellant, striking him with his fist, and knocking off his hat. Mounts then picked up the hat and put it in his car. When appellant, in a respectful manner, requested Mounts to return his hat, Mounts hit appellant on the head with the butt of his pistol, knocking him to his knees, and thereafter, when requested by some one else who had come up not to hit him any more, Mounts hit appellant again over the head with the pistol, raising knots upon his head and also cutting his scalp, from which blood flowed and which required several stitches to sew up. Mounts then left in his car, taking appellant's hat with him. A police call was made and, when a policeman arrived, he took appellant with him to hunt Mounts, and found him at another place in the railway yards. Appellant's hat was restored to him and Mounts was arrested and placed in jail.

The injuries received by appellant kept him in bed about three weeks and, as shown by proof, were of a severe nature. The petition alleged that Mounts was an employee of appellee, in the capacity of special officer to guard and protect the said railway yards. The evidence offered by appellant showed that the assault by Mounts was brutal and unprovoked, and resulted in serious injuries to appellant.

█ The evidence is sufficient to raise a jury issue as to appellee being the owner of the railway yards, and hence responsible to appellant, a third party, for the conduct of the employees of said yard. Assuming, under the evidence, that Mounts was an employee of the Texas & New Orleans Railway Company, and that appellee, as owner of such railway, is responsible for his conduct to a third party, the serious question is, Does the evidence raise the issue as to whether Mounts was working within the scope of his employment at the time he assaulted appellant?

Appellee attempted to establish the necessary facts mainly through the evidence of W. J. Cleveland, division special agent for the railway company, the duties of his employment being that of claim investigator; and also by the evidence of W. L. Cox, who described himself as "terminal freight master" of the Texas & New Orleans Railroad. The first of these witnesses (Cleveland) testified that Mounts was employed by the Texas & New Orleans Railroad; that the witness was transferred to Dallas in his present capacity in January, 1933; that the special officers employed under him have duties in those yards; that O. L. Mounts never had any duties in those yards since the witness came to Dallas, and that Mounts never patrolled those yards in the capacity of a special officer, and never had any duty in those yards since the witness came to Dallas. "As to whether O. L. Mounts on December 27, 1933, was in my employ, he was off duty at the time on account of being sick. He would have been in my employ when he returned after being sick. He was carried as an employee on sick leave. He was subject to call. These special officers that work under me are subject to call at any time for duty; that is, certain of them are. O. L. Mounts was subject to call at that time. * * * O. L. Mounts has not worked for me since December 27, 1933.

I don't think he has worked for the Railroad, but I don't positively know. * * * And it is my testimony that, from January 1, 1933, O. L. Mounts' duty was as special officer to ride trains out of Dallas, and that he was not employed in those yards, or to patrol railroad property in those yards. The jobs in the yards and Mr. Mounts' job were two separate pieces of employment. Men that patrol the yards are patrolmen and O. L. Mounts is classed as a sergeant. I could have called upon O. L. Mounts at any hour of the day or night to police those yards."

The witness further testified that the authority of the special agent working in those yards is the usual police power to protect the property; that the cars are all loaded with merchandise and various commodities, to keep people out of the cars, and from riding them, and from stealing things out of the yards, and to keep trespassers out of the yards.

On cross-examination, the witness testified that, during October, November, and the early part of December, it was Mounts' duty to police a particular freight train, which was the emergency train between Dallas and Houston; that the emergency train moved out of the Miller yards, located about five miles south of the Trinity river. Prior to December 1, 1933, Mounts had been assigned to that particular train, moving out of the Miller yards south to Houston, and had been on that duty ever since he (Cleveland) was on this division. The scheduled time for the moving of that particular train out of the Miller yards was 7 o'clock p. m., and Mounts was due to report at the Miller yards at 6:30, though the train would sometimes move as late as 8 or 8:30 p. m.; that Mounts would ride that train south to where he could make connection with another emergency train, coming back toward Dallas from Houston, and, if there was no such train, he would travel the train until he could make connection with a passenger train back to Dallas. The Miller yard is located five miles from the place where appellant was assaulted; that, so far as this witness knew, Mounts had not worked since December 24, 1933. The witness, Cleveland, identified a semimonthly time roll of the employees working under his supervision. This time roll shows that Mounts did not do any work in December after the 24th, and was paid only down to and including December 24, 1933.

The witness C. L. Cox testified that he knew O. L. Mounts when he saw him, and that he was a patrolman with the Texas & New Orleans Railroad; that a patrolman patrolled the yards, protecting them from pedestrians, keeping them off the property and from interfering with the company's property; that he did not know the hours Mounts would go on duty, but understood that he worked directly under Mr. Cleveland; that Mounts did not work under him (Cox); and that he had nothing whatever to do with Mounts and his duties.

Appellant testified that he had seen Mounts often in those yards, but did not state what he was doing or when he had seen him. Another witness testified that he had seen Mounts in those yards, but did not testify when, or as to what he was doing. There was evidence that on the night appellant was assaulted Mounts stopped another man, who was carrying some meat, and questioned him. The foregoing is all the evidence on this issue.

The burden is upon appellant to prove, by a preponderance of the evidence, not only the assault by Mounts, but also that Mounts was in the employ of appellee, and made the assault while working within the scope of his employment.

This evidence establishes that Mounts committed an unprovoked assault upon appellant, inflicting serious bodily injuries upon him. This evidence also establishes that, for a period of three days prior to the assault, Mounts was on sick leave, not working, but subject to call. The evidence also establishes that it was not a duty of Mounts' employment to patrol the yards adjacent to which appellant was assaulted, but that his duty began at the Miller yard, some five miles away and across the Trinity river; and that his duty was not that of patrolling either the Miller or any other yard, but was to ride a special freight train operating between Dallas and Houston, out of the Miller yard. The evidence tends to show that, when Mounts accosted appellant, he may have been performing some of the duties incident to patrolling the yards, but it clearly appears from the evidence that Mounts was not doing this work as a duty of his employment, and that in doing it he was not working within the scope of his employment.

It follows that appellant failed to make proof tending to establish the vital issue

to his recovery, that Mounts was working in the scope of his employment when the assault was made; hence failed to discharge the burden of proof to make a prima facie case against appellee, and the court did not err in giving peremptory instruction in appellee's favor. Trachtenberg et al. v. Castillo (Tex.Civ.App.) 257 S.W. 657; National Cash Register Co. v. Rider (Tex.Com.App.) 24 S.W.(2d) 28.

It necessarily follows that the judgment of the lower court should be affirmed, and it is so ordered.

Affirmed.