**GREAT AMERICAN INDEMNITY CO.**
*v. ORTIZ et al.*

No. 13523.

United States Court of Appeals,
Fifth Circuit.

Dec. 14, 1951.

Rehearing Denied Jan. 18, 1952.

Nat L. Hardy, Carl Wright Johnson, San
Antonio, Tex., for appellant

R. S. Crawford, R. S. Crawford, Jr., Crystal City, Tex., R. H. Mercer, San Antonio, Tex., H. C. Groesbeeck, Crystal City, Tex., for appellees.

Before HUTCHESON, Chief Judge, and BORAH and STRUM, Circuit Judges.

BORAH, Circuit Judge.

These four consolidated actions, arising out of a highway collision in which three men were killed and a fourth seriously injured, were brought by appellant, Great American Indemnity Company,[1] against the appellees[2] to set aside awards in favor of appellees made by the Industrial Accident Board of the State of Texas. The cause came on for trial and at the close of the evidence the insurance carrier moved for an instructed verdict. The court overruled the motion and submitted the case to the jury on special issues. In response thereto, the jury found, among other things, that Pedro Avila, Toribio Avila, Juan Avila, and Antonio Ortiz were employees of A. J. Tebbe & Sons Company on the day of the accident; that Juan Avila was not acting as an independent contractor; that the employer had agreed to pay these employees for loss of time and transportation costs in traveling daily to and from their homes at Crystal City, Texas, to their work in packing and unloading spinach at La Pryor, Texas; that at the time of the accident the four employees were being transported pursuant to this agreement and the injuries were sustained by each of them in the course of his employment. The jury also determined the average weekly wage of each of the four employees; the extent and duration of the incapacity suffered by Pedro Avila, who survived the accident; and the amount, reasonableness, and validity of expenses incurred for hospitalization, physician's services and drugs and supplies. Thereafter the trial judge entered judgment on the jury verdict in favor of appellees and this appeal followed.

Appellant here contends that the court below erred in overruling the motion for an instructed verdict in that: (1) the evidence was wholly insufficient to show that the four men were employees of A. J. Tebbe & Sons Company; and (2), even if they were Tebbe's employees they were not acting in the course of their employment at the time of the accident. The appellant also contends that the court erred in rendering a judgment in favor of Pedro Avila for $1,750.00 for medical and hospital expenses and in the admission of certain opinion testimony.

The first and second contentions raised by appellant require an examination of the record to determine whether the evidence was sufficient to support the jury finding that the men were employees of A. J. Tebbe & Sons Company and were in the course of their employment at the time of the accident. There was evidence to establish these facts: On the day of the accident and for a long time prior to that date, the Tebbe & Sons Company was engaged in the business of buying, selling and preparing vegetables for shipment and for that purpose maintained a railroad packing and loading shed at La Pryor, Texas. This plant was operated by its manager, Morris L. Dupree, who had full authority to hire and fire. In January, 1949, there were no laborers available at La Pryor and Dupree got in touch with Juan Avila at Crystal City and asked Juan if he could obtain a crew to load and pack spinach at the La Pryor plant. It is the custom in the vegetable business in that locality to get in touch with a "kingfish"[3]

1. Great American Indemnity Company is the Workmen's Compensation Insurance Carrier for A. J. Tebbe & Sons Company.

2. Francisco Ortiz is the surviving father and sole beneficiary of Antonio Ortiz, deceased. Pedro Avila was seriously injured in the accident. Guadalupe Mendez de Avila, Amelia Avila, Margarita Avila, Enrique Avila and Adelina Avila are the wife and minor children of Toribio Avila, deceased. Clara V. Avila, Oscar Avila, Rebecca Avila, Corina Avila, Lula Avila, Florina Avila, and Arminda Avila are the wife and minor children of Juan Avila, deceased.

3. The term "kingfish" is a colloquial expression unexplained in the record but doubtless refers to one of Mexican descent who can speak both the Spanish and English languages, and who has a standing and following in his community.

who, in turn, contacts friends and brings them in on the job. Dupree agreed to pay the crew for work in La Pryor at the rate of $17.50 for each car loaded, which was the price then being paid in Crystal City, plus $3.50 per car for transportation of the men from Crystal City, to La Pryor and return. The duties performed by these men were of a simple, manual character. The outside men used hooks, picks and axes to break ice into small pieces. They then removed the lid from a basket of spinach, lifted up about half of it, placed a shovel full of ice in the basket and replaced the spinach and the lid. The basket was then passed to the two men inside a railroad boxcar who stacked the baskets in tiers and put ice on top of them. In addition to these duties the men cleaned up the premises after the day's operations were finished and occasionally moved a railroad car and repaired tools belonging to Tebbe & Sons. On the day of the accident, February 11, 1949, the men finished work in the packing shed and after cleaning up the premises departed. Shortly thereafter they were proceeding directly down Highway No. 83 toward their homes in Crystal City when the truck in which they were riding collided with another vehicle.

■■ There was ample evidence, as appears more fully from the testimony set forth in the margin,[4] from which the jury

4. Morris L. Dupree, manager of Tebbe & Sons' La Pryor plant, testified:

"Q. Now, Mr. Dupree, when you had these men come up there to La Pryor to load this spinach, isn't it a fact you didn't turn that spinach you bought over to an ignorant Mexican and just tell him to go ahead and load the spinach; you didn't expect to do that, did you? A. No.

 *      *      *      *      *

"Q. And you expected to have the control of loading of those cars and the proper packing of the spinach to prevent loss, is that right? A. That is right.

 *      *      *      *      *

"Q. And you gave orders or instructions of different kinds to see that that work was done that way, is that correct? A. That is correct.

"Q. Now, when things were not running good, you had a man especially there to watch over it, didn't you? A. That's right.

"Q. Now, who did you have there all those times? A. Well, we had Antonio Esquivel and at times we had another boy * * *."

Antonio Esquivel, an employee of Tebbe & Sons, testified:

"A. I was in charge of seeing that the spinach would get on to the railroad cars, to see that it was properly iced, to see that the baskets were not broken, to see that they were properly packed * * *. I was to see that the platform was clean and that the tools remained in order, and that they would remain within the department of the warehouse. * * * I was in charge of orders which were issued to me in the morning, and I was to see that the people remained on the job and did the job as it was supposed to be done. * * * I had to see that none of the baskets were overloaded or underloaded.

"Q. * * * did you do this work yourself, or did you order someone else to do it? A. The work, I would order to be done, but I was present to see that it was done as ordered.

"Q. Who did you order to do it? A. The crew that was working there at the time, the ones that would load it on to the boxcar.

"Q. Go ahead; is there anything else that you had to do there? A. During the time that the car was being loaded, I would periodically go into the car to see that the baskets inside were being properly loaded. If not, I would make the boys unstack the load and restack it * * *.

"Q. Now, state whether or not you ever ordered them to move railroad cars? A. Yes.

"Q. Now, was it ever necessary for you to tell this crew to put more ice in the basket, or take some out, or put more spinach in, * * *? A. Various times.

 *      *      *      *      *

"Q. Now you spoke of giving these orders; did they obey your orders? A. Exactly.

"Q. Who was the man on the platform all the time there doing this work that you spoke about; was that you or somebody else? A. I was on the platform at all times, and I was ordering that group, and there was but one group to order, and they would do it as I would order it."

Pedro Avila, one of the appellees herein, testified:

could find that Tebbe & Sons retained the power and right to control and direct the men in the material details as to how the work should be done.

We are of opinion that from the above evidence a fair and impartial jury might reasonably find that the four workmen were employees of Tebbe and Sons on February 11, 1949; that Juan Avila was not acting as an independent contractor; and that at the time of the accident the four employees were being transported pursuant to the employment agreement. It is true that as a general rule workmen going to and returning from their work are not within the course of their employment. Texas Employers Ins. Ass'n v. Grammer, Tex.Civ.App., 157 S.W.2d 701; Smith v. Tex. Employers Ins. Ass'n, 129 Tex. 573, 105 S.W.2d 192. There is an exception to this rule, however, where the transportation is furnished by the employer as a part of the contract of employment and the employee is injured while being so transported. Western Ind. Co. v. Leonard, Tex. Com.App., 248 S.W. 655; Federal Surety Co. v. Ragle, Tex.Com.App., 40 S.W.2d 63; Tex. Employers Ins. Ass'n v. Inge, 146 Tex. 347, 208 S.W.2d 867; Maryland Casualty Co. v. Mason, 5 Cir., 158 F.2d 244. In the case at bar, the exception is applicable and the jury rightly found that the employees were injured while acting in the course of their employment.

■ Appellant's third point, that there was no proof as to what portion of Pedro Avila's expenses for medical attention and hospital services were incurred within the period provided by the statute, is well taken. Article 8306, Sec. 7, Vernon's Civil Statutes of the State of Texas, provides in part as follows: "During the first four weeks of the injury, dating from the date of its infliction, the association shall furnish reasonable medical aid, nursing, hospital services and medicines. During the fourth or any subsequent week, upon application of the attending physician certifying the necessity therefor to the Board and to the association, the Board may authorize additional medical attention and nursing not to exceed one (1) week, unless at the end of such additional week the attending physician shall certify to the necessity for another week of medical attention or nursing or so much thereof as may be needed, but in no event shall such medical attention or nursing be authorized for a period longer than ninety-one (91) days from date of injury. * * * Dur-

"Q. Who directed you in the work there in the shed? A. Antonio Esquivel and Gene Schmidt.

    *     *     *     *     *

"Q. * * * did Juan give you any orders there in the shed as to what to do or how to do it? (The question refers to Juan Avila, deceased.) A. No."

Luis Avila, a member of the loading crew, testified:

"Q. Now, after you had the conversation there, Luis—was Mr. Schmidt in there during any of that conversation? A. Yes, he was there after a while; he came in there, and he knew me pretty well and Uncle Juan, and he said he wanted me and Toribio to work inside of the car.

    *     *     *     *     *

"Q. * * * were you given instructions there at any time? A. Yes, sir.

    *     *     *     *     *

"Q. Who gave those instructions? A. Antonio Esquivel and Jim Schmidt.

"Q. Now, give us some samples of the instructions that were given and who gave them? A. Well, you see, like me, I was working inside, when I was stacking baskets, and Jim Schmidt and Antonio would come in the car and would say that they were not stacked right, or the ice was not right, not enough in there, and he just told me to stack them right, or to set them down and put them up again, and set them right. Well, they were controlling the whole thing there, and I obeyed the order."

E. J. Schmidt, the foreman for Tebbe & Sons, testified:

"Q. Did you keep the crew operating? A. Which crew?

    *     *     *     *     *

"Q. I mean the loading crew, you kept them operating? A. Oh, sure.

"Q. You did, personally? A. Yes, I was the supervisor over them.

"Q. And you supervised them very carefully, didn't you? A. I tried to, yes, sir.

"Q. And you tried to keep things under control? A. That's right. * * *

"Q. And you supervised everything they did there to see that it was under control, is that right? A. Yes, sir."

ing the fourth or any subsequent week of continuous total incapacity requiring the confinement to a hospital, the association shall, upon application of the attending physician or surgeon certifying the necessity therefor to the Industrial Accident Board and to the association, furnish such additional hospital services as may be deemed necessary * * * but in no event shall such hospital services be authorized for a period longer than one hundred and eighty (180) days from date of injury."

Doctor Poindexter, the only witness who testified on the point, merely fixed the hospital bill at $1283.70 and professional fees of the doctors who attended Pedro Avila at $500.00. The record discloses that Pedro was admitted to the hospital on February 12, 1949, and was dismissed from the hospital on July 21, 1949, but he was not at that time discharged from care. Walking irons were not removed from his legs until late November, 1949, and during that period of time Dr. Poindexter made several x-ray examinations. In fact, it appears that Dr. Poindexter examined Pedro as late as September, 1950. For failure to bring the proof as to hospital and medical expenses within the terms of the statute, Pedro Avila's cause, which is Civil Action No. 1321, must be remanded to the District Court for retrial of this single issue.

Other points raised by appellant have been carefully considered but are without sufficient merit to warrant discussion.

█ We are of opinion that the issue as to the amount of expenses for medical attention and hospital services incurred and recoverable under the terms of the statute is clearly distinct and separable from the other issues in the case which have already been tried and disposed of. It may be properly the subject of partial new trial in accordance with Rule 59(a) of the Federal Rules of Civil Procedure, 28 U.S.C. See also Gasoline Products Co. v. Champlin Refining Co., 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188; United States v. Calvey, 3 Cir., 110 F.2d 327, 331; Atkinson v. Dixie Greyhound Lines, 5 Cir., 143 F.2d 477, 480. Accordingly the judgment of the District Court in Cause No. 1321, except as to the issue of expenses for medical attention and hospital services is affirmed. On that issue the judgment is reversed and the cause is remanded to the District Court with directions to grant a new trial restricted to that issue. Upon the determination of that issue the court shall enter judgment in favor of appellee, Pedro Avila, for the amount of such medical attention and hospital services as may then appear to be recoverable by him.

The judgment appealed from is affirmed except as to Cause No. 1321, which is affirmed in part and reversed in part and remanded with directions.

The costs of appeal will be borne by the appellant.