## UNITED STATES FIDELITY & GUARANTY CO. v. FLANAGAN.

### No. 3081.

Court of Civil Appeals of Texas.
Beaumont.

March 20, 1937.

Rehearing Denied March 24, 1937.

J. Russell Mount, of Houston, for appellant.

Renfro & Keen, of Beaumont, for appellee.

O'QUINN, Justice.

Appellee, by next friend, brought this suit against appellant to set aside an order of the Industrial Accident Board of the state of Texas, and to recover compensation for an alleged compensable injury. Trial resulted in a judgment for appellee, and the case is before us on appeal.

■ The judgment will have to be reversed because appellee failed to allege in his petition that ·the Industrial Accident Board denied him compensation, and that he gave due notice of his intention not to abide said ruling and to file suit in a court of competent jurisdiction to set said order and ruling of said board aside, and to recover compensation. The proof was ample to show this fact, but in the absence of pleading was unavailing. Mingus v. Wadley, 115 Tex. 551, 285 S.W. 1084.

■ It is insisted that under the undisputed facts, the judgment should be reversed and here rendered for appellant. We overrule this contention. We think the facts show that appellee is entitled to compensation. The facts are: The Service Drug Company in the city of Beaumont was the employer, appellee, Frank Flanagan, was the employee, and appellant the insurance carrier. The record reflects, without dispute, that Flanagan applied to the Service Drug Company for employment as a delivery boy. He was given the job. In order to obtain the employment, he was required to and did provide his own bicycle as a means of transportation in carrying and delivering parcels as required by his employer. He had to keep his bicycle in good repair, and have same in readiness when called for service. His employer was not to furnish and did not furnish any place for storage or safe-keeping of the bicycle when the same was not in use by appellee for his master. Flanagan, who lived some 2½ miles from the drug store, in order to repair the bicycle and safely keep same at hand in readiness for use, had to take it to his home and there keep same at night. He was required to work ten hours per day and seven days per week. He usually got off from work about 10 p. m. He delivered packages where directed and frequently delivered packages while en route to his home after quitting time, but was not doing so at the time he was injured. In going home from work, he traveled a route of his own selection, but usually went the most direct route, and was so traveling the night he was injured. He had gotten within two blocks of his home, when he was run into by an automobile and injured. He received $6.50 per week pay. It is certain, we think, under the facts, that the injury received by appellee

had its origin in and arose out of his employment, and was received while engaged in the furtherance of the business of his employer. Maryland Casualty Co. v. Smith (Tex.Civ.App.) 40 S.W.(2d) 913.

The judgment is reversed and remanded for another trial.

COMBS, Justice (concurring).

I concur in the reversal of this case only because, under existing rules of decision, this court has no other alternative than to reverse it. Counsel for appellee so concedes in his brief.

This case affords a striking example of the pass to which we have come in Texas with respect to the power of the courts to do justice except in so far as it may result purely as an incident of the following of a system of procedural rules. Here, the rule works a grave injustice, but this court is powerless to prevent it. Technically, it was incumbent upon plaintiff to show jurisdiction by his pleading as well as by his proof. And since it has been held that the giving of notice of dissatisfaction with the award of the Industrial Accident Board within the time prescribed by statute is "jurisdictional" in nature, it follows that a petition which fails to allege such fact is "fatally" defective.

Getting away from the mere form and looking to the substance, it appears conclusively that the appellant suffered no injury by reason of the technical defect in the plaintiff's pleading, yet, we must now do the perfectly foolish and futile thing of reversing and remanding this case in order that the plaintiff's attorney, perhaps by mere interlineation of a line in his petition, may allege the giving of the notice. The record before us shows conclusively that the notice was given in accordance with the statute. It is, therefore, apparent that the amendment of the pleading cannot possibly raise any issue on that point. It is equally apparent that the omission in the pleading had no conceivable effect on the judgment appealed from, nor can the amendment of the pleading affect in any way the judgment to be entered upon another trial. It has no relation whatever to the justice of the case. Yet, the injured boy, whose rights are being thus disregarded, must be cast in the cost of this appeal. And in addition to that he must await another trip through the courts to collect the compensation which the appellant owes him, or else he must settle for what he can get. Such, it seems, is the penalty imposed by our system of procedural rules for what evidently was a mere oversight of counsel with respect to a matter which was of no real consequence and which could have and doubtless would have been corrected in the trial court had it been seasonably called to the attention of court and counsel. It should give pause that our courts have thus reached the point where counsel may bring about such a result by "lying in wait" with a general demurrer. It is obvious that such a system permits, if it does not, in the very nature of things, encourage counsel to watch for just such opportunities to preserve reversible error, without calling the same to the attention of the court and opposing counsel at a time when they can be corrected.

It seems to me that it is not inappropriate to ask how did it come about that courts thus find themselves so rigidly bound by procedural rules that they cannot do otherwise than to enforce such an unjust result.

That it has not always been thus can be easily established by reference to the early opinions of our courts. Thus, many years ago a great jurist, in refusing to reverse an obviously just judgment, disposed of the technical errors urged against it by saying: "There is no reason to apprehend that substantial justice has not been done between the parties. It is by no means clear that any principle of law has been violated, to the injury of the appellant. If a new trial was directed, it is not probable that it would be attended with a materially different result, or that any benefit would thereby accrue to either party. And, finally, it is, perhaps, better that an end be put to litigation respecting so very small matters, than that trivial and unimportant errors should be made the subject of revision with critical severity, where no material benefit can reasonably be expected to result, and there is no essential principle of justice or law involved, to be vindicated." Justice Wheeler, in Able v. Lee, 6 Tex. 427, 432. It was superfluous to introduce the foregoing quotation with the statement that it was written many years ago. Any lawyer familiar with the opinions of our courts would have known from the content of the quotation that it was not written in recent years.

The unjust result from the rigid application of rules, as exemplified in the case be-

448

fore us, is of all too frequent occurrence. See Traders & General Ins. Co. v. Rudd (Tex.Civ.App.) 102 S.W.(2d) 457. Such results, it seems to this writer, are but the logical fruitage of the growth of our precedent system of law as applied to mere rules of procedure. To the legal student it is evident that for years there has been an increasing trend of our courts to give to prior decisions on mere procedural matters the same rigid application in subsequent cases and to adhere to them with the same reluctance to abrogate them that is accorded to decisions which announce principles of substantive law. Rules of substantive law, particularly if they are of long standing, should, of course, be abrogated or modified only upon most evident and compelling grounds. This, for the obvious reason that property rights which have become fixed with respect to them are necessarily affected by a change of such rule. But obviously no such consequences can attend the abrogation or change of procedural rules. It cannot be reasonably contended that any person has or can acquire any "property right" in a mere rule of procedure. The right to change or to abrogate procedural rules so as to make them best serve the ends of justice is inherent in the courts as a necessary concomitant of their power to pass upon the rights of litigants. And while it has been recognized that the Legislature has the power to exercise the court rule making function, and to a considerable extent it has exercised the power, still an analysis of our real problem will show that most of the hampering rules of procedure with which we are beset are entirely of the courts' own making, either by the injection of new rules or "doctrines," or by giving a narrow and rigid construction to legislative rules when a broader and more flexible interpretation just as reasonably could have been adopted. And thus by the long-continued adding of precedent to precedent the courts have all but stripped themselves of their power to do right except as it may result incidentally from the following of the rules. It seems to this writer that a long step forward can be taken in reimplementing our courts with the power to do right by simply rediscovering the doctrine of harmless error; as it were, a return to first principles. Rules of procedure are necessary to an orderly practice, but they should be regarded as mere aids to justice—not her master.

I am aware that in offering the foregoing comments I may subject myself to criticism. Frankly, I have offered them with considerable reluctance, and only because I feel that the attention of bench and bar should be directed to the problem involved. Certainly it is one which is challenging in its implication.