# REPUBLIC UNDERWRITERS v. TERRELL et al.

## No. 1882.

Court of Civil Appeals of Texas. Eastland.

March 17, 1939.

Smith, Goldsmith & Bagley, of Austin, and Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, for appellant.

Callaway & Callaway, of Brownwood, for appellees.

LESLIE, Chief Justice.

This is a workmen's compensation case. The claim was allowed by the Industrial Accident Board. The insurance carrier, the Republic Underwriters, carried the controversy to the district court where a trial was had before the court and jury, resulting in the verdict and judgment in favor of deceased's sole beneficiaries, his widow, Mrs. Ethel Terrell, and Thomas E. Terrell, Jr. This appeal is prosecuted from that judgment.

The only issue submitted to the jury, other than that involving lump sum payment, was special issue No. 1, as follows: "Do you find from a preponderance of the evidence that at and before the time that Thomas E. Terrell was killed, he was furnished gasoline free of charge by the Midway Refining Company for use in his automobile, for the purpose of transportation to and from his home to his place of employment? Answer 'Yes' or 'No.' " The jury answered "Yes."

The appellant's first contention is that the appellees' pleadings and evidence were insufficient, as a matter of law, either to state or establish that Thomas E. Terrell was killed while engaged in or about the furtherance of his employer's affairs or business, or that what he was doing at the time he was killed had to do with and originated in his employer's work, trade, business or profession. The trial court overruled appellant's general demurrer, and motions for instructed verdict and judgment non obstante veredicto.

Under this proposition, the pleadings will first be looked to. It is alleged that at the time of his death the employee Thomas E. Terrell was employed by the Midway Refining Company, to work at its Refinery, and then follows the allegation that his compensation was to be "a salary of $90 per month, and for further consideration that the said Refinery would furnish to the said Thomas E. Terrell all necessary gasoline to operate his Buick automobile from the town of Goldsboro [where the Refinery was located] to the town of Lawn which is located about six miles north of said town of Goldsboro."

That "at the time of said contract of employment, which was a verbal contract, the said Thomas E. Terrell, hereinafter referred to as deceased, resided in the town of Brownwood and desired to move his family to the point where he was employed or as near thereto as he could, but was unable to obtain a residence in the town of Goldsboro where said Refinery is located, and the little village of Lawn was the nearest point where he could rent or obtain living quarters for his family and it was expressly agreed and understood that because of this situation that the said Midway Refinery Company in addition to his salary of $90 per month would furnish to the said deceased all necessary gasoline to and from his home. That his hours of work were from seven o'clock p. m. to seven o'clock a. m. he being on the night shift, and he left his home each afternoon around six o'clock in order to go to his work, it being his agreement with his employer and his custom, that he would drive to and from his work in his Buick automobile owned by said deceased, and operated with the gasoline furnished him by his said employer."

It is then further alleged that in the afternoon of June 13, 1936, the deceased "left his home in Lawn about ten after six for the purpose of driving to Goldsboro to begin his labors with said employer and at a point about three miles south of the town of Lawn in trying to pass by another motor vehicle on the said highway, and while he was driving along the public highway which runs from the town of Lawn to the town of Goldsboro, he accidentally caused his said Buick automobile to run into and collide with a cement banister of a bridge or culvert on said road completely wrecking said automobile and causing the immediate death of the said Thomas E. Terrell. The defendants allege that it was necessary for the said Thomas E. Terrell to go from his home each evening and return to his home each morning and that in truth and in fact at the time of said accident and death of aforesaid, he was in the course of his employment within the meaning and purview of the Workmen's Compensation Act of the State of Texas."

From the standpoint of the ruling on the general demurrer, and also assuming that the matters alleged were established by competent evidence, are the appellees entitled to recover under such facts? That is, was the employee Terrell injured or killed in the course of his employment? In their briefs, the appellant and appellees concede there is no Texas authority directly on the point.

It is the general rule that in such cases compensation is not allowed for injuries to employees while going to or returning from the place of their employment. The reason for the rule is that one injured on a street or public highway while going to or from his work suffers his injury as a consequence of the common risk or hazard of streets and highways to which members of the public in general are alike subject, and not as a consequence of risks and hazards having "to do with and originating in the work, business, trade or profession of the employer * *."

"The statute clearly implies, as has frequently been held, that the injury has to do with and originates in the employment when such injury is the result of some peril, risk, or hazard inherent in or incident to the conduct of the work or business." Smith v. Texas Emp. Ins. Ass'n, 129 Tex. 573, 105 S.W.2d 192, 193.

Obviously the above rule implies the use of a street or highway by the workman merely to go to or from his work, and a different case is presented as soon as it is established that the work itself necessarily involves exposures to the perils and hazards of the street or highway. Smith v. Texas Emp. Ins. Ass'n, supra; Annotations, page 978, following opinion in Marley v. Orval P. Johnson & Co., 215 Iowa 151, 244 N.W. 833, 85 A.L.R. 969.

It has also been held that the employee's injury occurs within the course of his employment when he is injured while using the conveyance or means of transportation to and from work furnished by his employer as a part of the consideration for the services of the employee. Western Indemnity Co. v. Leonard, Tex. Com.App., 248 S.W. 655; Watts v. Continental Cas. Co., Tex.Com.App., 18 S.W. 2d 591; Jones v. Casualty Reciprocal Exchange, Tex.Civ.App., 250 S.W. 1073; Viney v. Casualty Reciprocal Exchange, Tex.Civ.App., 82 S.W.2d 1088.

Also, the injury is held to occur in the course of employment where the appellee at the time of injury is using the means of ingress or egress from the premises (place of work) of the employer and the same have been provided by the employer for that purpose. Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S.W. 72, 28 A.L.R. 1402; Kirby Lumber Co. v. Scurlock, 112 Tex. 115, 246 S.W. 76.

It is sometimes said that an injury occurring under either of the circumstances last mentioned is an exception to the general rule first stated, namely, that an injury received by the employee in the use of the street or highway merely to get to or from his work is not sustained in the course of his employment. Accurately speaking, we do not believe such circumstances necessarily constitute an exception to the general rule, but the facts and circumstances establish that the work itself involves exposure to the perils and hazards of the street and highway, thereby bringing the injury, if any, in the course of his employment. However, either process of reasoning appears to reach the same conclusion.

In any event, the appellees in the instant case seek to take this case out of what is called the general rule and bring it within that class of cases relating to the furnishing by the employer of the means of transportation to and from the place of work. As noted, the contention is predicated upon the fact that the employer furnished as a part of the contract of employment the gasoline used by the employee in operating his automobile while driving from his home at Lawn to his place of work at Goldsboro, six miles away, and return. In other words, did the employer, in providing the gasoline, furnish the employee transportation within the meaning of the so-called exception or under such terms and conditions as to bring the injury within the course of Terrell's employment?

It is undisputed that Terrell owned the automobile. He had exclusive control of it at all times, and the employer had none. The employee's sole purpose in being at the point of injury was simply to reach the employer's premises for his own place of labor. It appears that the test of employer's liability in cases where he provides transportation is that he has control and direction of the means and use thereof. By such control of the means of transportation the employer can avoid departure from direct or designated routes and in the exercise of his control he may avoid extra hazards. Under such circumstances, liability would logically follow such control and direction. As said in Lawler's work on Texas Workmen's Compensation Law, p. 222: "These cases would seem to show an underlying feeling on the part of the courts that recovery should be allowed where the employer has control of

the means of transportation, unless the employee is on a private mission of his own. Where the employee or a third person furnishes the means of transportation, or where the employee walks, it seems that recovery is allowed only when the accident occurs at a place customarily used as the means of ingress to and egress from the employer's premises, or on what amounts to his premises, or when the employee is on the public street in the performance of some specific piece of work for his employer, or because of the fact that his work is itinerant in nature."

Further, in the instant case the Buick automobile was evidently the means of transportation. True, the gasoline was incident to, but it was not the means of, transportation. The automobile could not be run without gasoline, but neither could it be run without a carbureter or steering wheel, either of which, if furnished by the employer, would hardly render the insurance carrier liable. Further, if the employer had furnished the tires as a part of the compensation that would not have made the casings the means of transportation. If the employee had found it convenient or expedient to travel by horse and buggy from his home to the place of business and return, and the employer had furnished the feed upon which to feed the horse, it would hardly be considered that the feed constituted the means of transportation. The horse and buggy would evidently be such means. If the contract had been to pay the employee the sum of $100 per month, the extra $10 being allowed for the purchase of gasoline, the contract would not have been different in substance from that which was made, but it would appear somewhat clearer that the automobile was the means of the transportation and that it was exclusively within the ownership and control of the employee.

■ After a careful consideration of the facts and circumstances surrounding the death of Terrell, we do not believe it would be a sound proposition of law to hold that he sustained his injuries in the course of his employment on the theory that his employer was furnishing him means of transportation over the highway at the time he met his death. This record presents no theory upon which the judgment can be sustained. Such conclusion we believe to be warranted and required

by the principles announced and employed in such cases as Smith v. Texas Emp. Ins. Ass'n, supra; Texas Ind. Ins. Co. v. Clark, Tex.Civ.App., 50 S.W.2d 465; Sullivan v. Maryland Cas. Co., Tex.Civ.App., 82 S.W.2d 1089, and the other general authorities above cited.

■ The appellees cite in support of the judgment various authorities but it is believed that they are easily distinguishable from the instant one. Reliance is had upon such cases as Western Ind. Co. v. Leonard, Tex.Com.App., 248 S.W. 655, 657, where it was held that "Transportation being a part of his contract of employment, it is clear to us that he was in the employment of the Universal Shipbuilding Company from the time he left Houston until he returned * * *." There the employer furnished transportation by train and the injury was evidently sustained in the course of his employment. The general rule is also stated in 45 Tex. Jur. p. 526, sec. 119, in this language: "Where, as part of the contract of employment, transportation to and from the place of work is furnished by the employer, the relation of employer and employee exists during the transportation * * *." The circumstances bring the injury within the course of employment.

■ It is even more definitely stated in Republic Underwriters v. Warf, Tex.Civ. App., 103 S.W.2d 871, 872, wherein it is said: "The cases seem to hold that where, * * * transportation is a part of the contract of employment, and the employee sustains accidental injuries while so being transported by the employer, or by the means afforded by the employer for such transportation, *the employee will be regarded as within the course of his employment.*" (Italics ours) Other cases of analogous circumstances where the peculiar facts establish that the injury fell within the course of employment are as follows: Maryland Cas. Co. v. Smith, Tex. Civ.App., 40 S.W.2d 913; United States F. & G. Co. v. Flanagan, Tex.Civ.App., 103 S.W.2d 446; Fritzmeier v. Texas Emp. Ins. Ass'n, Tex.Com.App., 114 S.W.2d 236.

The appellees cited the Kentucky case of Turner Day & Woolworth Handle Co. v. Pennington, 250 Ky. 433, 63 S.W.2d 490, 492, as being in point and sustaining the judgment in the instant case. We do not believe it controls the disposition of this case. The following excerpt from

756

that opinion distinguishes it from the in-stant one. "Applying the observations of the Supreme Court in this Voehl Case [288 U.S. 162, 53 S.Ct. 380, 382, 77 L.Ed. 676, 87 A.L.R. 245], to the instant one, we find that the appellant was very anxious to retain in its service men of the type of appellee; that, when there was no work for him upon location, it found work for him in its plant at Bowling Green; that, as an inducement to continue in its employ and to go to such locations as it might assign him, appellant was willing and agreed that he might return each week-end to his home at Bowling Green, and *that it regarded him in its service on such trips is demonstrated by the fact that it made use of him whenever it saw fit to carry messages to and from the office and the field, and that it paid his expenses in going to and returning from Bowling Green on these week-end trips,* first, by paying his railroad fare, and later by standing the expense of the oil and gas needed for his car in making the trip. * * * The course of dealing between these parties established that on these week-end trips the service covered the time used in making the trips." (Italics ours)

If we are correct in the foregoing conclusions it is unnecessary to consider the proposition challenging the existence of any evidence in the record to support the finding of the jury that the deceased was being furnished gasoline free of charge by the employer. That would become immaterial. Such would likewise be true of other serious questions (1) challenging the existence of any evidence to show proper wage rate, and (2) the legality of the argument of counsel for appellees. The issue of wage rate was not submitted to the jury, but seems to have been determined by the court on inconclusive testimony. Traders & General Ins. Co. v. Chancellor, Tex.Civ.App., 105 S.W.2d 720, writ dismissed; American Ins. Co. v. Singleton, Tex.Com.App., 24 S.W.2d 26; Traders & General Ins. Co. v. Bulis, 129 Tex. 362, 104 S.W.2d 488; Traders & General Ins. Co. v. Dwyer, Tex.Civ.App., 104 S.W.2d 63.

However, our decision is based upon the first ground discussed, and for the reasons here assigned, and since the case has been fully developed, the judgment of the trial court is reversed and judgment here rendered for appellant.