SELMER COMPANY and another, Respondents, vs. INDUSTRIAL COMMISSION and another, Appellants.

*May 8—June 2, 1953.*

For the appellant Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondents there was a brief by *Welsh, Trowbridge, Wilmer & Bills* of Green Bay, and oral argument by *Fred N. Trowbridge.*

GEHL, J.   The employer's foreman testified that when he received the order to send a man to Briergate farm he directed the employee to go in the latter's car and that if he finished the work during the day and "it was close to quitting time to go home," and that he would be credited for an hour of work time "for his transportation cost."

There was, therefore, an obligation to transport Gillis to his place of work and home and because he was injured while being so transported, his estate is entitled to compensation. *Western Fruit Co. v. Industrial Comm.* 206 Wis. 125, 238 N. W. 854; *West Shore Transport Co. v. Industrial Comm.* 258 Wis. 477, 46 N. W. (2d) 203. The situation is no different than it would have been had Gillis used the employer's car to reach the place of work and, at the direction of the foreman, had driven it to his home; or if the employer had directed the employee to take a bus to his place of work and had agreed to pay his fare to the place of work and to his home. The Gillis car was the instrumentality chosen by the employer for the carrying on of its work and in compliance with the agreement to transport Gillis to the place of work and from there to his home. *Rock County v. Industrial Comm.* 185 Wis. 134, 200 N. W. 657. In the latter case the county had undertaken to provide transportation for its employees to and from work. Claimant was injured while riding home with a fellow employee who had been in the habit of using his own car when the county's equipment was unavailable. The claimant had been directed to ride in the fellow employee's car. The court said (p. 139):

"Although the county did not own the car, it was an instrumentality used by it in its business and designated to be used on this occasion for carrying out the agreement with the claimant. Although the county was not literally in control of the car when the accident occurred, it did control and exercise the choice of the vehicle to be used. From a legal point of view the liability is the same as if the claimant had been injured while riding in the car generally used for the

purpose. If after his day's work was done the claimant had chosen to ride in the car of some passer-by or a public conveyance having no connection with the county, quite a different question might be raised as to whether at the time of the accident he was performing service growing out of or incidental to his employment. But when the applicant was riding from his place of work to his home in a vehicle which under his contract for transportation was provided for him by his employer, and designated as the one to be used, he was riding as an employee of the county, and the danger was incidental to his employment."

The fact that in the *Rock County Case* the claimant was directed to ride in a fellow employee's car, rather than in his own, does not render the quotation inapplicable. In each of the cases the employer controlled and exercised the choice of the vehicle to be used, and in each claimant was riding from his place of work to his home in a car which, under his contract for transportation, was provided for him and designated by the employer as the one to be used.

*Kerin v. Industrial Comm.* 239 Wis. 617, 2 N. W. (2d) 223, is cited by the employer as authority for its contention. In that case the court treats the *Rock County Case* as being in that class of cases "where the employer has agreed to actually transport employees as a part of the contract of employment." And the court says (p. 622):

"In such cases the employer determines the means of transportation, the route traveled, the time and place for the employees to assemble for transportation. In such cases the employer has the control of the transportation."

The court distinguishes the *Rock County Case* upon the ground that in the *Kerin Case* it had not been established that there had been an agreement on the part of the employer actually to transport the employee and said, as was the fact in the *Kerin Case,* that "a mere additional daily allowance to the employee, which he is at liberty to use for board and room

at his place of employment or for travel to and from work in the employee's car, does not extend the compensation so as to cover the employee while commuting to and from his work." (P. 624.) The court in the *Kerin Case* was particularly careful to point out that there was no agreement actually to transport employees as a part of the contract of employment. The situation in the instant case is different, however, as we have pointed out. Here there was an express contract to provide the employee transportation to the place of work and to his home.

In the *Kerin Case* the court called attention to the fact that the commission had found that the provision as to payment of transportation had reference only to transportation at the beginning and end of a job and not for interim transportation. The provision as to payment for transportation in the instant case was that the employer carry the employee to Briergate farm to start the work at that place and upon its completion, if that were accomplished on the same day, to carry him home. It was completed on the same day; he was transported at the end of his job under the employer's obligation to transport him to his home. There was no obligation for interim transportation; nor was he killed while engaged in interim transportation as was the claimant in the *Kerin Case*. Had the situation in the *Kerin Case* been the same as it exists here, the conclusion would undoubtedly have been the same as we find it necessary to be in the instant case.

*By the Court.*—Judgment reversed and cause remanded with direction to confirm the order of the Industrial Commission.

CURRIE, J. (*dissenting*). This is a case in which the deceased employee Gillis had two places of employment on the day he was fatally injured. One of these places of employment was the premises of the Northwest Engineering

Company in the city of Green Bay, and the other was the Briergate farm some seven miles distant. At noon Gillis' foreman instructed Gillis to go out to the Briergate farm and repair a roof. It had been customary for the employer company, when it sent employees out to such farm to allow them one extra hour's work for the use of their cars, and the foreman informed Gillis that the same arrangement would apply that day. The foreman anticipated that the job would take at least the remaining portion of Gillis' eight-hour day and might possibly mean that he would have to return to the farm to complete the job the next morning. However, nothing was said by the foreman about returning to the Northwest Engineering Company premises that day, and it was understood between him and Gillis that Gillis could return directly to his home if the job did occupy the remainder of his eight-hour day. Gillis' eight-hour day ended at 3:30 p. m. and it took him until then to complete the job, and he was on his way home when the automobile accident occurred which resulted some weeks later in his death.

The general rule is that where an employee during the working day is required to go between two places of employment, he is performing services growing out of and incidental to his employment in going from one of such places to the other. *Milwaukee v. Althoff* (1914), 156 Wis. 68, 145 N. W. 238; and *Milwaukee v. Industrial Comm.* (1924), 185 Wis. 311, 201 N. W. 240. Therefore, there would have been no question under this rule but that if Gillis had been killed on his trip from the Northwest Engineering Company to Briergate farm death benefits would have been payable under the Workmen's Compensation Act. However, after Gillis had performed his day's work at the Briergate farm, he was performing no service growing out of or incidental to his employment in returning from the farm to his home any more than he would have been if he had been returning home from the premises of the Northwest Engineering Company.

The majority opinion holds that because Gillis was paid the extra hour's pay for the use of his car for making the trip to and from the farm, such fact made the return journey home one in which he was performing services growing out of and incidental to his employment. The decision of this court in *Kerin v. Industrial Comm.* (1942), 239 Wis. 617, 2 N. W. (2d) 223, rules the present case, because such decision holds that where an employee is given a travel allowance to cover the use of his own car going to and from work, the payment of such allowance does not cause the employee to be covered under the Workmen's Compensation Act while traveling to and from work. In that case the employee was a journeyman electrician residing in Sun Prairie and working in Evansville. He was paid $1.50 per day in addition to his regular wage to cover his transportation costs journeying to and from work. The employee was killed while returning to his home at Sun Prairie from Evansville after completing his day's work. The court in its opinion stated (p. 622):

"Sec. 102.03 (1) (c), Stats. 1939, recognizes that an employee, injured while off from the premises of the employer, and while on his way to and from work, is not covered by the Workmen's Compensation Act. Only in cases where the employer has agreed to actually transport employees as a part of the contract of employment does the act apply. In such cases the employer determines the means of transportation, the route traveled, the time and place for the employees to assemble for transportation. In such cases the employer has the control of the transportation. Such considerations are pointed out in *Rock County v. Industrial Comm.* 185 Wis. 134, 200 N. W. 657."

The majority opinion attempts to distinguish the *Kerin Case* by pointing out that the employee in that case had the option of returning to his home at night, or staying in Evansville and having his board and lodging paid for by the employer. We fail to see how this distinguishes the case. The majority opinion also cites *Rock County v. Industrial Comm.*

(1924), 185 Wis. 134, 200 N. W. 657. In the *Rock County Case* the employee had the option of remaining at the county's construction camp overnight, or of being transported in a county vehicle to and from work. The difference in outcome between the *Rock County* and *Kerin Cases* therefore did not turn on this feature in either case, but rather on the fact that in the *Kerin Case* the employee provided his own vehicle if he wished to return home at night and was paid for the use of the same, while in the *Rock County Case* the county provided the vehicle.

The doctrine of the *Kerin Case,* that the payment to an employee of the cost of transportation to and from his place of residence to or from the place of work does not furnish a basis for finding that injury sustained during such transportation is one incurred while the employee is performing services growing out of and incidental to his employment, is supported by the following cases: *Smith v. Industrial Acc. Comm.* (1941), 18 Cal. (2d) 843, 847, 118 Pac. (2d) 6, 8; *Guenesa v. Rulon, Inc.* (1937), 124 Pa. Super. Ct. 569, 572, 189 Atl. 524; *Public Service Co. v. Industrial Comm.* (1939), 370 Ill. 334, 335, 18 N. E. (2d) 914; *Industrial Comm. v. Heil* (1931), 123 Ohio, 604, 176 N. E. 458; *Baumbach v. Industrial Comm.* (1938), 59 Ohio App. 101, 17 N. E. (2d) 389; *Republic Underwriters v. Terrell* (Tex. Civ. App. 1939), 126 S. W. (2d) 752; *Orsinie v. Torrance* (1921), 96 Conn. 352, 113 Atl. 924.

In *Public Service Co. v. Industrial Comm., supra,* Beckman, an employee of the plaintiff public utility, resided in Blue Island, Illinois, and was employed in the employer's plant at Niles Center. He was paid 67 cents per day to cover the cost of his transportation. Sometimes the employee drove his own car, and sometimes in the car of another employee who was also paid such 67 cents extra per day for transportation costs. The employee was killed while on his way to work in an automobile collision while riding in the

car of the other employee. The Illinois supreme court reversed an award of the Illinois industrial commission granting compensation and in its decision stated (18 N. E. (2d) 915):

"In the case before us, Beckman is not shown to have had any duties to perform away from the plant. Whether the sixty-seven cents was wages or expense money is immaterial. His death did not arise out of or in the course of his employment, and his employer is, therefore, not liable."

In *Guenesa v. Rulon, Inc., supra,* the employee resided in Philadelphia and worked in the near-by town of Marcus Hook. He received a salary of $50 per week and in addition his employer reimbursed him for carfare he paid between Philadelphia and Marcus Hook. In attempting to board a train after completing work at Marcus Hook, he was thrown to the platform and injured. In denying compensation the Pennsylvania superior court stated (189 Atl. 525):

"Here, while the employee was paid carfare in addition to his salary, the facility of transportation was not provided by the employer; it had no control or authority whatever over the train operated by the railroad company to accommodate the public."

The foregoing reason advanced by the Pennsylvania court for denying compensation, viz., that the employer had no control or authority over the means of transportation, is applicable to the instant case. Here the employer had no control over the private automobile of Gillis which he used as a means of conveyance in going to and from his work.

The majority opinion quotes from the decision of *Rock County v. Industrial Comm., supra.* In that case the employer was obligated to furnish the transportation, and not to reimburse the employee for cost of transportation as in the *Kerin Case,* the instant case, and the cases from other jurisdictions hereinbefore cited. Ordinarily a county truck took the men to and from Janesville who did not have cars of their

own and who did not wish to remain overnight in the county camp which was provided at the construction site. This county truck had already left the construction site when plaintiff discovered that he was not going to be able to ride home in his son's automobile as he had planned. The foreman on the job then requested one Van Hise to take plaintiff home. The county supplied Van Hise with gasoline and oil for his personal use in operating his car in return for Van Hise running errands for the county with the car. Thus the transportation provided in the *Rock County Case* by means of the Van Hise car was the same as if it had been the county's own vehicle. This explains the language of the court in its decision that (p. 139), "From a legal point of view the liability is the same as if the claimant had been injured while riding in the car generally used for the purpose [of transporting employees to and from work]."

For these reasons the learned trial court's judgment reversing the award of the commission should be affirmed.

I am authorized to state that Mr. Justice FAIRCHILD and Mr. Justice MARTIN concur in this dissenting opinion.