CAROLINE PRIBYL, appellee, v. STANDARD ELECTRIC COMPANY, employer, and HARTFORD ACCIDENT & INDEMNITY COMPANY, insurance carrier, appellants.

No. 48617.

(Reported in 67 N.W.2d 438)

334

December 14, 1954.

Jordan & Jordan, of Cedar Rapids, for appellants.

Barnes, Wadsworth, Elderkin & Locher, of Cedar Rapids, for appellee.

Larson, J.—This is a workmen's compensation case. The claimant's husband, a journeyman electrician and union member,

was hired through the union by the employer, Standard Electric Company, of Cedar Rapids, to work at Coralville, in Johnson County. An existing contract between the union and certain contractors, among whom was the defendant employer, provided in part: "On work outside Linn County the Employer shall furnish transportation." Pursuant to conferences between the defendant employer and a union representative held to explore ways to obtain and transport some twenty-five needed workmen who would accept employment on the Coralville project, an agreement was reached and later approved by the union-employer's joint conference committee, whereby said employees would receive 8c a mile for the 54-mile round trip in lieu of being actually transported by the employer in vehicles provided by him for that purpose. While driving his car to work at Coralville under such working agreement, the claimant's husband was fatally injured in an accident on December 1, 1952. On February 5, 1953, claimant filed her application for arbitration. The matter was tried before the deputy commissioner who found for the claimant, and the commissioner affirmed the findings. The district court sustained the ruling of the industrial commissioner and that decision is now before us for review.

The principal issue throughout these proceedings has been whether the injuries resulting in the death of Charles Pribyl arose out of and in the course of his employment by the defendant Standard Electric Company. Defendants urge that Mr. Pribyl lost his life following injuries he received going to his regular place of work to commence his work day, and that at the time of his injury he was not engaged in a place where his employer's business required his presence; that he was traveling to work in his own vehicle, under his own control, and was furnishing his own transportation under a separate agreement which changed or modified the original agreement by which the defendant employer had agreed to furnish transportation. The claimant denies those allegations and contends the proven facts, circumstances and inferences generated a question of fact for the commissioner, and his findings in favor of the claimant thereon are conclusive.

I. It is true, in the absence of fraud the findings of fact made by the industrial commissioner within his powers are con-

clusive and binding upon us. Section 86.29, Code of 1954; Bruner v. Klassi, 241 Iowa 1007, 1011, 44 N.W.2d 366, 368, and cases cited therein; Reddick v. Grand Union Tea Co., 230 Iowa 108, 114, 296 N.W. 800, 803.

II.  However, the pertinent facts are not in dispute, nor may different inferences reasonably be drawn therefrom. Both parties relied upon the testimony in the transcript and its fair inferences relating to the negotiations before and by the joint conference committee as contractually establishing either (1) an acceptable method of furnishing transportation by the employer, or (2) an acceptable substitute therefor. It must therefore be evident the controlling question here is a law question, and we are of course not bound by the commissioner's findings or conclusions of law.

It is difficult at times to differentiate between findings of fact and findings or conclusions of law in such cases, but where the ultimate conclusion can be arrived at only by applying a rule of law, the result so reached embodies a conclusion of law and is not then a finding of fact. Mallinger v. Webster City Oil Co., 211 Iowa 847, 234 N.W. 254; Ward v. Cardillo, 77 App. D. C. 343, 135 F.2d 260; Lake v. Bridgeport, 102 Conn. 337, 128 A. 782; 56 C. J. S., Master and Servant, section 13.

We are satisfied here the court must consider and conclude as a matter of law whether or not under the facts a new or separate agreement existed. The trial court considered this question and pointed out that it was "the final decision to hire the man's car at 8¢ a mile", and that "it was mutually agreed on * * * that he [the employer] was going to hire the men's cars at 8¢ a mile and let them drive their own car to the job." (Emphasis ours.) It construed the contract as singular and not separate and distinct, as simply further providing how the employer would carry out his obligation to provide transportation. We are satisfied and agree with this construction. That this conclusion is supported by substantial evidence we have no doubt. The employer did not have adequate facilities to transport the number of employees he needed to Coralville, as required under the provisions of his contract with the union. The union representative and the employer did discuss various possibilities whereby

sufficient men could be obtained and transported for that job. Several suggestions, including one that the employer would buy Buicks or Pontiacs to haul the men, were rejected. The joint conference committee records show: "It was the unanimous decision of the Joint Conference Committee that a rate of 8¢ per mile using map mileage by the most direct route *shall be adequate transportation.*" (Emphasis ours.)

The claimant's husband with three others formed a "car pool", met at a designated place for the trip to Coralville, and took turns in using their cars. Under the union-management agreement they received no pay for the time consumed in the journey. Defendants' burden of establishing a new and different agreement is not convincingly carried in view of the testimony of Mr. Summers, the union representative, that such agreements in the past were designated as "hiring the man's car." The precedent for this arrangement was established the year before on similar employment at the Veterans Hospital in Iowa City. "On that job it was decided the contractor *hire the man's car* and pay him on a mileage basis" to fulfill the transportation obligation. (Emphasis ours.) Mr. Shea, an attorney representing the union, and chairman of the joint conference committee concerned herewith, also recalled "that the rate of 8¢ per mile using map mileage *by the most direct route* would be considered as adequate transportation." (Emphasis ours.)

These and other circumstances surrounding the agreement are sufficient and competent evidence to convince us, as they did the commissioners and the district court, that there was no effective release of the employer's firm obligation to provide transportation. We attach no special significance to the commissioner or his deputy's use of the phrase "* * * as an alternative the employees would furnish their own transportation * * *." It does not indicate a finding that the original agreement was dissolved and a new one formed, for in view of their conclusion it is clear the commissioners meant *in lieu of* actual transportation. Regardless, it is not binding on us for the reasons set out in Division I hereof.

III. Section 85.3, Iowa Code, 1954 (same in 1950), makes compensable "all personal injuries sustained by an employee arising out of and in the course of the employment."

Section 85.61(6) defines these words to include "injuries to employees whose services are being performed on, in, or about the premises * * *, and also injuries to those who are engaged elsewhere in places where their employer's business requires their presence and subjects them to dangers incident to the business." Unless it can be fairly said the employee, while going to or from his regular place of employment, is engaged in a place where his employer's business requires his presence, his injury en route is not compensable. Otto v. Independent Sch. Dist., 237 Iowa 991, 23 N.W.2d 915. "Arising in the course of" has a well-defined meaning, and all authorities hold that it refers to arising during the period of employment and at a place where the employee may be performing the duties of his employment or doing something incidental thereto. See 71 C. J. 647, 659, sections 397, 404; 28 R. C. L. 797, section 89; Bushing v. Iowa Railway & Light Co., 208 Iowa 1010, 1018, 1019, 226 N.W. 719; majority opinion in Otto v. Independent Sch. Dist., supra. So cases involving an injury from a highway accident suffered while en route to or from work require a determination whether the employee was engaged in his employer's business at the time and whether there was a causal relation between the injury and such employment.

Ordinarily an employee whose work begins when he arrives in the morning is *engaged in his own business* when he travels to work at the regular time. He is not then pursuing his master's business. But *the same employee would be pursuing his master's business* if his trip to and from the employer's premises were a special trip made in response to special request, agreement or instructions to go from his home to the plant to do something for the employer's benefit. In that case it is clear the entire trip would be his master's business and by all authorities would be held to be in the course of the employment. The reason for the so-called general rule announced by Chief Justice Hughes is that *ordinarily* the hazards the workmen encounter in such journeys *are not incident to the employer's business*. But he said: "* * * this general rule is subject to exceptions which depend upon the nature and circumstances of the particular employment." Voehl v. Indemnity Ins. Co., 288 U. S. 162, 169, 53 S. Ct. 380, 382, 77 L. Ed. 676, 87 A. L. R. 245.

It is therefore important in cases of this nature to ask: Whose business was he pursuing at the time of the injury? To obtain the answer we must review all the facts in the case.

■■ When an employee has other duties to perform besides those of his regular employment, and such other incidental duties often occur when in pursuit of the master's, not the employee's, business, an injury then suffered must be said to have occurred during the course of his employment even though the employee may not yet be at the employer's premises or have commenced his regular work. Kyle v. Greene High School, 208 Iowa 1037, 226 N.W. 71; Otto v. Independent Sch. Dist., supra. A lack of a complete understanding of this fact discloses an endless source of difficulty in determining when employment begins or ends. In the case at bar the decision depends largely on the answer to the question: Was the employee driving for the employer or himself? Did the employer agree to and did he furnish transportation, or did he bargain away his responsibility by increasing the employees' wages by way of reimbursement of travel expenses? This is the nub of the controversy. The special duty or errand exceptions to the so-called coming-and-going rule, in reality are in most instances the performance of duties not usually considered among those of the employee's regular employment. No matter how different they may be, if performed by direction of the employer, it is nevertheless employment under our Workmen's Compensation Act. This direction of course can be specific, under the terms or permissible inferences of a contract or agreement, or by indirection. The facts control.

We are convinced Pribyl was directed to transport himself or obtain transportation to Coralville. In so doing he was so employed, though of course he had not yet started his regular employment as an electrician at the site in Coralville. He received no pay for the time used on the trip, but this is not important and would not destroy his relationship as an employee at the time, if in fact he were performing a task for and at the direction of his employer.

Perhaps the leading Iowa case on special missions is Kyle v. Greene High School, supra. It was decided squarely on the

fact that the employee was going to the schoolhouse on a special service or errand incidental to but outside the regular duties of his employment. We think its principle is important to the decision herein.

The transportation duties, or the errands incidental to but outside the regular duties of Pribyl as an electrician, were provided by contract. The responsibilities of transportation were upon the employer, and by direction these special services were assigned or delegated to the employees. That transportation of these skilled employees from Cedar Rapids to the work site was incidental to the nature of the employment and in the interest of and by direction of the employer, there can be no doubt.

In the recent case of Pohler v. T. W. Snow Constr. Co., 239 Iowa 1018, 33 N.W.2d 416, we unanimously recognized a special service outside regular working hours compensable. We held there that the injury arose out of and was incidental to the employment and was causally connected therewith. While there must be some connection between the death and the employment, it need not be in a common-law sense of causal connection, but is sufficient if it is connected in the common-sense everyday realistic view. See O'Leary v. Brown-Pacific-Maxon, Inc., 340 U. S. 504, 71 S. Ct. 470, 95 L. Ed. 483.

IV. No exact formula can be laid down which will automatically solve every case. While services on regular hours such as we have here, at a stated place, generally begin at that place, there is always room for agreements by which the special service may be taken to begin earlier or elsewhere. Otto v. Independent Sch. Dist., supra, 237 Iowa 991, 23 N.W.2d 915, and cases cited therein; Cudahy Packing Co. v. Parramore, 263 U. S. 418, 424, 44 S. Ct. 153, 68 L. Ed. 366, 369, 30 A. L. R. 532.

This is not the case of one traveling from his home to his employer's premises unaffected by a special arrangement or agreement. It is true, as defendants contend, that where the employer merely pays the costs of transportation, an injury occurring during the journey has often been held one not arising out of and in the course of employment. Ward v. Cardillo, supra; Public Service Co. of Northern Illinois v. Industrial Commission, 370 Ill. 334, 18 N.E.2d 914; Industrial Commission v. Heil, 123 Ohio St. 604, 176 N.E. 458; Kerin v. Industrial

Commission, 239 Wis. 617, 2 N.W.2d 223. But see Selmer Co. v. Industrial Commission, 264 Wis. 295, 58 N.W.2d 628, where the Wisconsin Supreme Court found liability when an employer, obligated to furnish transportation, permitted the employee to choose the instrumentality. It must be conceded that there must be something more than mere payment of such transportation costs. We have more here. The facts and circumstances clearly disclose that the employer paid the 8¢ per mile for 54 miles as a means *of carrying out its obligation* to furnish transportation to and from Coralville. There was no gratuity.

It has also been held that where there is a contractual obligation under which it becomes necessary to provide a service such as transportation of employees, it becomes irrelevant whether the employer performs the obligation by supplying its own vehicle, hires the vehicle of an independent contractor, makes arrangement with a common carrier, reimburses the employees for the use of their own vehicles, or reimburses the employees for the costs of transportation by any other means they desire to use. It seems reasonable that such employees could be authorized to choose the method of transportation to effectively render the special service, which is to transport themselves to the employer's work project in another county. "In other words, where the employer has promised to provide transportation to and from work, the compensability of the injury is in no way dependent upon the method of travel which is employed." So said the United States Supreme Court in Cardillo v. Liberty Mut. Ins. Co., 330 U. S. 469, 483, 67 S. Ct. 801, 809, 91 L. Ed. 1028, 1039. Certainly, as far as the compensation statute is concerned, the employer is free to carry out its transportation obligation in any way the parties desire.

V. Mr. Schroeder, the employer, testified he presumed the men were driving their own cars to the Coralville project and did not object. It is only fair to presume he contemplated and approved of this transportation arrangement. It is true there was little or no control by the employer on the trip, but, while the presence or absence of control is a factor to be considered, it is not decisive. Cardillo v. Liberty Mut. Ins. Co., supra. It may be pointed out, however, that the employer's control extended at least to deny substantial deviation from any but the

"most direct route." Pohler v. T. W. Snow Constr. Co., supra.

In situations, as here, where the journey is in other respects incidental to the employment, the absence of control by the employer has not been held to preclude a finding that an injury arose out of and in the course of employment. Cudahy Packing Co. v. Parramore, supra, Davis v. Bjorenson, 229 Iowa 7, 293 N.W. 829, and Pohler v. T. W. Snow Constr. Co., supra.

VI. The employees met at a common meeting place to start their journey. On that journey they were, we think, "engaged elsewhere in places where their employer's business requires their presence." Whether there could be a recovery for injuries received in travel between their homes and the meeting place we need not now decide. But see Ward v. Cardillo, supra; Scott v. Willis, 150 Va. 260, 142 S.E. 400. We find here an obligation by contract or agreement defining the special service required of the employees sufficient under these facts to sustain a recovery for an injury arising out of and in the course of the employment.

VII. The compensation law is for the benefit of workers, designed to compensate them for industrial injuries. Otto v. Independent Sch. Dist., 237 Iowa 991, at 1007, 23 N.W.2d 915; Conyers v. Krey Packing Co., Mo. App., 194 S.W.2d 749, 751. This whole transaction of obtaining, transporting and using skilled labor at Coralville, in our opinion, was just such an industrial activity as is contemplated in the compensation law.

On the established facts in this case we are of the opinion that Pribyl was not on a mission of his own to the job at Coralville, but that under the agreement he was engaged in his employer's business of furnishing transportation of himself and others to a special job at Coralville, Iowa; that he was at the time and place of the injury at a place required of him under his contract of employment; and that he did lose his life as a result of injuries arising out of and in the course of his employment. The action and finding of the industrial commissioner is therefore affirmed.—Affirmed.

GARFIELD, C. J., and BLISS, OLIVER, WENNERSTRUM, MULRONEY, HAYS, and THOMPSON, JJ., concur.

SMITH, J., concurs in result.