**GREAT RIVER MEDICAL CENTER and Farm Bureau Mutual Insurance Company, Petitioners–Appellants,**

v.

**Kimberly VICKERS, a/k/a Kimberly Bertlshofer, as the Administrator of the Estate of Kelly Lynn Reynolds and Guardian of Minor Children, Jade Renee and Savannah Margaret Marie Reynolds, Respondents–Appellees.**

No. 06–1476.

Court of Appeals of Iowa.

May 14, 2008.

Paul Swinton of Morain, Burlingame & Pugh, West Des Moines, for appellants.

Thomas Reavely of Whitfield & Eddy, P.L.C., Des Moines, for appellees.

Considered by VOGEL, P.J., and ZIMMER and BAKER, JJ.

BAKER, J.

This case involves a claim for workers' compensation death benefits and arises out of the death of Kelly Reynolds, which occurred while she was driving home after reporting for work at her employer, Great River Medical Center. Reynolds was the mother of two young children, Savannah and Jade. The claimant in this case is Kimberly Vickers, the administrator of the Kelly Reynolds's estate.

**Background Facts.**

Reynolds had been scheduled to work on January 7, 2003, but on the evening of January 6 called in to work to inform management that she was ill and was inquiring about whether she could take a "low census day" on January 7. A low census day is a system the hospital uses where, when the ratio of hospital personnel to patients is at a certain level, the employee can be relieved of their normal duties without having to claim a sick day. The request was denied, and Reynolds was advised to report to work at 7:00 a.m. for her normal shift.

At 5:00 a.m. on January 7, Reynolds again called the hospital and talked to Tara Poggemiller, the hospital's staffing specialist, requesting a low census day. This request was denied because low census cannot be determined until 6:00 a.m. for the 7:00 a.m. shift. At 6:00 a.m., Pogemiller received another call. She claimed it was from Reynolds and that she denied a low census day due to the patient count. Juan, Reynolds's husband, claimed that he, rather than Reynolds, phoned in at 6:00 a.m. He testified at the subsequent workers' compensation hearing that Pogemiller told him that if Reynolds "did not come in and report to work as scheduled that she would no longer be employed at Great River."

Accordingly, Reynolds prepared to come in for work, which was normally a forty-to sixty-minute drive. Just prior to her shift, Reynolds reported to Cheryl Ann Lambert, her hospital unit director. She observed Reynolds's ill appearance. Feeling that Reynolds's apparent illness could imperil patients' health, Lambert sent Reynolds home. On the drive home, Reynolds was involved in a single-car accident and died.

Lambert also testified about having discussed the hospital's absenteeism policy with Reynolds. This policy provides for progressive discipline, whereby four incidents of absenteeism over a rolling six-month period is considered excessive. The policy provides that an "incident" is an absence that has not been previously approved by the employee's supervisor. Sick leave is considered an incident. On the seventh such incident, termination will occur.

**Workers' Compensation Proceedings.**

Reynolds's estate filed a petition requesting death benefits for her two minor children and medical benefits, based on the hospital's requirement that she report to work or face termination. Following a hearing, an arbitration decision was issued in which the deputy commissioner found that two exceptions to the "going and coming" rule were satisfied—the dual purpose exception and the special errand exception. The deputy therefore held the estate was entitled to death and medical benefits. Upon appeal, the commissioner affirmed, largely adopting the deputy's findings and decision. The district court subsequently affirmed on judicial review. Great River and its insurance carrier, Farm Bureau Insurance Company, appeal from this ruling.

**Standards of Review.**

Our review of an industrial commissioner's decision is for correction of errors at law. *Simonson v. Snap–On Tools Corp.,* 588 N.W.2d 430, 434 (Iowa 1999). When we review the district court's decision, "we apply the standards of chapter 17A to determine whether the conclusions we reach are the same as those of the district court. If they are the same, we affirm; otherwise we reverse." *Mycogen Seeds v. Sands,* 686 N.W.2d 457, 464 (Iowa 2004).

Under chapter 17A of the Iowa Code (2007), the Iowa Administrative Pro-

cedure Act, the district court is authorized to review decisions rendered by the industrial commissioner. *Bearce v. FMC Corp.*, 465 N.W.2d 531, 534 (Iowa 1991). The district court may reverse or modify an agency's decision if the decision is erroneous under a ground specified in the Iowa Administrative Procedure Act, and a party's substantial rights have been prejudiced. Iowa Code § 17A.19(10). Our role as an appellate court reviewing this agency decision is threefold: (1) determine if the commissioner applied the proper legal standard or interpretation of the law; (2) determine if there was substantial evidence to support the commissioner's findings; and (3) determine if the commissioner's application of the law to the facts was irrational, illogical, or wholly unjustifiable. *Clark v. Vicorp Rests., Inc.*, 696 N.W.2d 596, 603–04 (Iowa 2005) (discussing the interplay between Iowa Code sections 17A.19(10)(c), (f), and (m)).

■■ We do not apply a "scrutinizing analysis" to the commissioner's findings. *Terwilliger v. Snap–On Tools Corp.*, 529 N.W.2d 267, 272 (Iowa 1995). Rather, we are bound by the agency's findings of fact if supported in the record as a whole and will reverse the agency findings only if we determine that substantial evidence does not support them. *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 218 (Iowa 2006). Under the substantial evidence standard,

> we determine whether there is substantial evidence in the record as a whole to support the decision of the agency. . . . Evidence is not unsubstantial merely because it would have supported contrary inferences. Evidence is substantial when a reasonable mind could accept it as adequate to reach the same finding.

*Bearce*, 465 N.W.2d at 534 (citations omitted). "Courts must not simply rubber stamp the agency fact finding without engaging in a fairly intensive review of the record to ensure that the fact finding is itself reasonable.'" *Wal–Mart Stores, Inc. v. Caselman*, 657 N.W.2d 493, 499 (Iowa 2003) (quoting Arthur A. Bonfield, *Amendments to Iowa Administrative Procedure Act*, at 68 (1998)).

### Going and Coming Rule.

■■ Generally speaking, to receive workers' compensation benefits, a claimant must show by a preponderance of the evidence that the injury arose out of and in the course of the claimant's employment. *St. Luke's Hosp. v. Gray*, 604 N.W.2d 646, 652 (Iowa 2000). "In the course of" the employment concerns the time, place, and circumstances of the injury. *Quaker Oats Co. v. Ciha*, 552 N.W.2d 143, 150 (Iowa 1996). An injury occurs in the course of employment when it is within the period of employment at a place where the employee reasonably may be engaged in doing something incidental thereto. *Id.* An employee does not cease to be in the course of employment merely because the employee is not actually engaged in doing some specifically prescribed task, if, in the course of employment, the employee does some act which he or she deems necessary for the benefit or interest of the employer. *Farmers Elevator Co. v. Manning*, 286 N.W.2d 174, 177 (Iowa 1979).

■ The well established "going and coming" rule generally provides: "[A]bsent special circumstances, injuries occurring off the employer's premises while the employee is on the way to or from work are not compensable." *2800 Corp. v. Fernandez*, 528 N.W.2d 124, 129 (Iowa 1995). Under this rule, "the hazards encountered by the employee in going to or returning from work are not ordinarily incident to his employment within the meaning of the phrase as used in the work[ers'] compensation law." *Bulman v. Sanitary Farm Dairies*, 247 Iowa 488, 492, 73 N.W.2d 27,

29 (1955); *see also Pribyl v. Standard Elec. Co.*, 246 Iowa 333, 339, 67 N.W.2d 438, 442 (1954) ("Ordinarily an employee whose work begins when he arrives in the morning is *engaged in his own business* when he travels to work at the regular time. He is not then pursuing his master's business.").

Conceptually the employment is the *cause* of injuries in going and coming because "if not for the job there would be no reason in most cases to approach or leave the premises." *Frost v. S.S. Kresge Co.*, 299 N.W.2d 646, 648 (Iowa 1980) (citing 1 A. Larson, *The Law of Workmen's Compensation*, § 15.00 at 4–12 (1978)). Thus, the "going and coming" rule applies only to the second prong of the test for workers' compensation coverage: the injury must arise "in the course of" the employment. *Id.* The rule measures the work connection of the incident as to time, place, and activity. *Bailey v. Batchelder*, 576 N.W.2d 334, 339 (Iowa 1998).

There are, however, several exceptions to the going and coming rule that " 'extend the employer's premises under certain circumstances when it would be unduly restrictive to limit coverage of compensation statutes to the physical perimeters of the employer's premises.' " *Fernandez*, 528 N.W.2d at 129. We now discuss those exceptions as pertains to this case.

The agency concluded Reynolds's accident and resulting death arose out of and in the course of her employment with Great River, and in doing so found that she had satisfied two exceptions to the "going and coming rule." In particular, it held that her estate was entitled to recovery because she was on a "special errand" for her employer when on her way home from work and because she was engaged in a "dual purpose trip." Great River claims the commissioner improperly applied those exceptions to the "going and coming rule" to the facts. We agree.

■ *Special Errand Exception.* The first exception to the going and coming rule relied on by the agency is the "special errand" exception. *See Golay v. Keister Lumber Co.*, 175 N.W.2d 385, 388 (Iowa 1970). Under this exception, if an employee is on a special errand or mission for his or her employer at the time of the injury, the injury is held to have arisen in the course of employment.

It has been said that the substance of this rule is that:

> When an employee, having identifiable time and space limits on his employment, makes an off-premises journey which would normally not be covered under the usual going and coming rule, the journey may be brought within the course of employment by the fact that the trouble and time of making the journey, or the *special inconvenience, hazard or urgency* of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself.

1 Larson, *Workers' Compensation Law*, § 14.05 (2007) (emphasis added). In *Pribyl*, our supreme court stated an employee

> would be pursuing his master's business if his trip to and from the employer's premises were a special trip made in response to a special request, agreement or instructions to go from his home to the plant to do something for the employer's benefit. In that case it is clear the entire trip would be his master's business and by all authorities would be held to be in the course of the employment.

*Pribyl*, 246 Iowa at 339, 67 N.W.2d at 442. The supreme court further explained the special errand exception as follows:

[T]he going and coming rule is [not] dependent on the extent of the hazards of travel. It is based rather on contract, express or implied. If the employer assumes the burden of the workman's coming and going expense, that is held to imply that the *time* of coming and going is a part of the time of employment. Or *when the employer sends [the employee] on a special mission apart from his usual employment, the coming and going time of such mission is implied to be within the course of employment.*

*Bulman,* 247 Iowa at 494, 73 N.W.2d at 30 (emphasis added).

In special errand cases, Iowa courts have typically asked the following question in considering the applicability of the special errand exception: "Whose business was [the employee] pursuing at the time of the injury?" *Pribyl,* 246 Iowa at 340, 67 N.W.2d at 442. An answer that the employer's business is being served means an injury incurred during that errand may be compensable as an exception to the general going and coming rule. In this case, however, the answer to this question must be that Reynolds was pursuing her own business at the time of her accident and resulting death.

 In considering the special errand exception applicable, the agency found that "Ms. Reynolds sustained injuries resulting in her death because of a special errand she undertook at the direction of the hospital." The commissioner also found that "all involved knew that she was ill and . . . could not be assigned to patient care due to her illness". It further found that Great River had given a "specific instruction" for her to report for work despite her reported illness to verify that she was ill. Thus it reasoned "this is not a typical going and coming case because decedent was not traveling to and from the employ-er's premises to engage in her work." This, it felt, essentially transformed the situation into a special errand.

Great River first maintains "substantial evidence does not support the facts as determined by the workers' compensation commissioner." In particular, it assails the following finding made in the commissioner's appeal decision: "[Reynolds] was compelled to travel to the employer's premises so the employer could verify that she was ill and then send her back home." After a thorough review of the record, we conclude this finding is not supported by substantial evidence in the record. There is simply no evidence from which the commissioner could have determined Great River required Reynolds to report to work *so that it could verify her illness.* Absent this finding, there was no additional employer purpose in requiring her to show up for work. *See, e.g., Southern California Rapid Transit Dist., Inc. v. Workers' Comp. Appeals Bd.,* 23 Cal.3d 158, 151 Cal.Rptr. 666, 588 P.2d 806, 811 (1979) (affirming award of benefits to employee who was injured in accident after bringing doctor's authorization to employer where the authorization was brought in at the specific request of the employer as required under the workers' compensation laws).

While substantial evidence may support that Reynolds (or her husband) was informed that she would be terminated if she used a sick day, this was merely recognition of her absenteeism history and Great River's explicit personnel policy. That policy, as noted above, provides for termination upon an employee's seventh incident of absenteeism. Were Reynolds to have taken a sick leave on the day of her eventual death, it would have been her seventh absenteeism and may have warranted termination. However, nothing in the record supports that Great River's in-

tention was to "verify" Reynolds's illness, or to make her prove that she indeed was sick, nor could this inference have been made under the evidence presented. This seems to have been a gratuitous observation made by the commissioner and is not supported by substantial evidence.

Further, Kelly does not direct us to any support for this finding in the record. Rather, the substantial-evidence portion of her argument is limited to arguing that Reynolds would be subject to disciplinary action (in the form of termination) if she did not report for work. As noted, there clearly is support for *this* in the record from the testimony of Reynolds's husband who recounted that he was informed his wife would be terminated if she did not show up for work. There was also substantial evidence in the record to find that all knew she was ill. However, this evidence falls short of establishing that the hospital *required her presence to verify* Reynolds's claimed illness.

At its root, what we have here is that Kelly was denied a low census day multiple times and was informed that she may be terminated if she did not report for work. As noted previously, Reynolds's choice to show up for work was voluntary, albeit one with clear knowledge of the consequences she faced pursuant to the absenteeism policy if she did not report that morning. The fact Kelly knew she may be fired, however, does not transform the character of her trip into a special errand. Essentially, the stage was set here by Kelly's previous absenteeism incidents. She simply could not miss another day of work and chose to go to work in recognition of this.

Conceptually, this was not unlike any other day where an employee is expected to show up at work for her appointed shift. It goes without saying that every employer benefits from having its employees come to work and the expectation of having an employee report as scheduled is not special or extraordinary in nature. There was no *special* inconvenience, hazard, or urgency that transformed the normal commute to work into a special errand. No extra onerousness attended to this trip to and from work and nothing increased the relative importance of the journey as part of the employment. Absent these special factors, *see Larson* at § 14.05 (identifying factors that may serve to "transform the character of the journey" into a special errand), this cannot be considered a special errand. Here, Reynolds was simply expected to show up for work. To transform a simple expectation that an employee come to work into a compensable event would have the special errand exception swallow the going and coming rule. Accordingly, we conclude the agency determination that Reynolds was engaged in a special errand on behalf of her employer while on the drive home from work was a wholly unjustifiable application of the law to the facts. We therefore reverse.

■ *Dual–Purpose Exception.* The second exception considered by the agency is the dual-purpose exception. As the exception has been expressed by Iowa courts, an injury during a trip that serves both a business and personal purpose is within the course of employment if the trip involves the performance of a service for the employer which would have caused the trip to be taken by someone else even if it had not coincided with the personal journey. *Golay v. Keister Lumber Co.,* 175 N.W.2d 385, 388–89 (Iowa 1970). Where the trip combines a noncompensable purpose with a special errand for the employer of sufficient substance to be viewed as an integral part of the service, the trip is considered to be in the course of employment. *Id.*

■ With regard to this exception, the agency found that Great River benefited in

"not having an ill employee working near patients" and that Kelly benefited "in returning home [so] that she would have the time to recuperate." However, this exception also requires a special errand. *Id.* As noted above, no special errand existed. We therefore reverse on this ground as well.

**Conclusion.**

Under the going and coming rule, an employee is not deemed to be in the course of the claimant's employment while commuting to and from work absent certain exceptions. Because we find no exceptions apply to the facts of this case, we reverse and remand this case to the district court for entry of an order reversing the commissioner's award of benefits and directing the commissioner to deny the claimant's request for benefits.

**REVERSED.**